JAMES M. RANDALL *vs.* CONNECTICUT RIVER RAILROAD
COMPANY.

Hampden.   Jan. 25. — March 2, 1882.   ENDICOTT, J., did not sit.

At the trial of an action against a railroad corporation for personal injuries occasioned to the plaintiff while attempting to cross in a wagon the tracks of the corporation at a grade crossing, the evidence as to how far the view of the track towards the south (the direction from which the train came which caused the accident) was obstructed by buildings and fences was conflicting.   The plaintiff's evidence tended to show that, before crossing, he looked up the track towards the the south; that the track was obscured by the smoke of a train which had just passed the crossing going south; that he listened for the whistle of any train going north, and could hear no whistle or other signal of its approach.   *Held*, that the question whether the plaintiff used due care in crossing the track was for the jury.

TORT for personal injuries occasioned to the plaintiff while attempting to cross the tracks of the defendant's railroad in Springfield.   Answer, a general denial.   Trial in the Superior Court, before *Allen*, J., who allowed a bill of exceptions, in substance as follows:

The accident happened at a point where Wason Avenue, a private way, crossed at grade the tracks of the defendant's railroad at a right angle.   This crossing, which had been kept planked by the defendant, was the usual and only convenient place for passing across the railroad track in this vicinity.   The defendant had established a whistling post for this crossing such as is usually set up near grade crossings of highways.   There was evidence that the accident happened at five or six minutes past eight o'clock in the morning.

It appeared in the evidence offered by the plaintiff, that through the length of Wason Avenue between Main Street and the track, a distance of about five hundred feet, except where

obstructed by the buildings and fences as hereinafter stated, the road of the defendant south of the crossing could be seen for a distance of about a quarter of a mile, and that from the fence on the east line of the location of the defendant's road to the east rail of the track upon which the accident happened, a distance of thirty-three feet, there was nothing to obstruct the view of an approaching train for nearly three fourths of a mile. At this place the road was straight and perfectly level, and the approach to the crossing was on the same grade as the railroad.

It appeared in evidence that on the south side of Wason Avenue there was, at its junction with Main Street, a dwelling-house. Still nearer there was a small tool-house, and at quite a distance southerly of the station and on the easterly side of the tracks there was a factory building, and nearer the railroad there was a chapel; and the plaintiff contended that the view of a train approaching from the south was substantially cut off from a point near Main Street to the westerly end of the fence aforesaid. The defendant contended otherwise. From near said chapel to within thirty-three feet of the east main track of the railroad there was a common picket fence eight feet in height, with pickets about two and one half inches wide, with spaces of about the same width.

The plaintiff testified that, on the morning of the accident, he, with four others, was riding down Wason Avenue towards the railroad in a wagon; that they drove down the avenue and approached the track at a very slow trot; that, as they approached the track, they saw the passenger train from Chicopee pass the crossing and stop at the station, which was about two hundred feet south of the crossing; that the morning was damp and cloudy; that the smoke came over upon the east track so that one could see only the rear car of the down train; that he could not see the engine of the down train as it was standing at the depot, on account of the smoke which came from it settling on the track; and that he looked and listened as he approached the track, and heard no sound or signal of an approaching train. He further testified as follows: " Just as the horse was stepping on the track, I first saw the up train coming through the smoke; it gave three sharp whistles, seemed to be not more than twenty-five feet off; I thought the engine would strike the wagon. I

started to jump forward, and either jumped or was thrown from the wagon on to the ground; the moment I struck the ground, the train went over my arm. I sat on a board across the wagon. I sat in the middle, a man on each side of me. We all three jumped forward; Mellen, who was driving, and one other, were on the front seat."

D. W. Mellen testified: "I drove the horse at the time of the accident. As near as I can remember, just as we turned from Main Street into the avenue the Chicopee train passed down and stopped at the station. The air was such that morning that the smoke rolled over and settled on the track. I looked down the track; was looking toward the train; could see nothing on account of the smoke. As we approached the crossing there was such a mass of smoke and steam settling down on the track that we could see only a part of the Chicopee train; the crossing was clear of smoke. I am confident that the whistle did not sound. I was looking down the track and listening. The first I knew of the up train was when the horse's body was on the up track; can't say whether I saw the train or heard the alarm whistle first; I think I struck the horse with the reins. We went across the track safely; in turning round, I saw the others were out." On cross-examination, Mellen testified: "I have been familiar with the crossing for five years; crossed it from twenty to forty times a year; knew there was no gate or flagman there; knew that whoever crossed must rely upon signals or observation; saw the down train; it left a trail of smoke and steam behind it which shut off the view down the track. It was a few moments past eight o'clock. I knew that a passenger train left Springfield depot at eight o'clock. The down train may have stopped two or three moments. This was its usual time. We knew that this passenger train was about to start. The bell was ringing as we drove on to the track. I cannot state positively that the train had not already started, and that the wind was from the west."

There was similar evidence from the other witnesses who were in the wagon as to the condition of the track and the effect of the smoke. Each of the four persons who were in the wagon with the plaintiff testified that, as they approached the track, they were looking and listening to see whether there was an

approaching train, and neither heard or saw anything of it until just as it was upon them. This was all of the evidence bearing upon the question of the care used by the plaintiff in crossing the track.

It was in dispute whether or not the whistle was blown or the bell rung by the up train at the whistling post. It was not in dispute that the horse and vehicle used by the plaintiff were suitable and proper.

The defendant asked the judge to rule " that, upon all the evidence in the case, the plaintiff has not shown that, in crossing the track, he was in the exercise of due care; and that, if the plaintiff voluntarily drove upon the crossing when the railroad track was covered and obscured by steam and smoke from the train which had just passed over the crossing from the north, so that by reason of this smoke he could not see the train approaching from the opposite direction in time to avoid a collision with it, he was not in the exercise of due care."

The judge declined to rule as requested; but instructed the jury that, under all the circumstances of the case, it was for them to decide whether or not the plaintiff was in the exercise of due care.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*N. A. Leonard & G. Wells*, for the defendant.

*G. M. Stearns & C. L. Long*, for the plaintiff.

MORTON, C. J. A majority of the court is of the opinion that the question whether the plaintiff, or Mellen who was driving for him, used due care in crossing the railroad track, was properly submitted to the jury. The evidence as to how far the view of the track towards the south was obstructed by buildings and fences was conflicting. The evidence tended to show that, before crossing, both the plaintiff and Mellen looked up the track towards the south; that the track was obscured by the smoke of a train which had just passed the crossing going south; that they listened for the whistle of any train going north, and could hear no whistle or other signal of its approach. It cannot, upon the evidence, be held, as matter of law, that they were guilty of negligence, but the question is one of fact for the jury.

*Exceptions overruled.*