KENNEY v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

IN BANC.

1. **Negligence :** RAILROAD : SOUNDING WHISTLE AND RINGING BELL AT CROSSING : STATUTE. While section 2608, Revised Statutes, 1889, requiring signals by bell or whistle on a locomotive approaching highways, shifts the burden of proof to the railroad as to the cause of injuries sustained by persons at public crossings where no statutory signal was given, yet it does not change the established rule that if the plaintiff's proof discloses that the damages resulted from another cause than the negligence of the railroad in omitting the required signal there can be no recovery.

2.    ———— : CONTRIBUTORY NEGLIGENCE : QUESTION OF FACT. The supreme court will not reverse the finding of the trial court that the plaintiff was not negligent (as a matter of law) in approaching and crossing a railroad track, unless no other conclusion is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it.

3.    Railroad : CROSSING TRACK : NEGLIGENCE : QUESTION FOR JURY. In an action for injuries received from a passing railway train at a public crossing it appeared that plaintiff who was familiar with the ground stopped twice to listen on approaching the crossing, once at a distance of one hundred and twenty feet and again at ninety feet ; that he heard nothing ; that he did not look because a train could not be seen until he came within a few feet of the track. When he reached that point, his horses moving at a brisk walk, he looked to the west and saw nothing ; then looked to the east and saw the train almost on him, his horses being at that time nearly across the rails. He struck them to hurry them up, but the buggy failed to clear the track in time, and the injury ensued. *Held* not error to refuse to instruct the jury that plaintiff could not recover.

4.    ———— : RINGING BELL OR SOUNDING WHISTLE. The giving of signals by either bell *or* whistle will meet the requirements of section 2608, Revised Statutes, 1889.

5.    ———— : ———— : INSTRUCTION. An instruction in an action under said statute will not be a ground for reversal because it requires the whistle to be sounded *at exactly eighty rods* from the crossing, where there was no evidence showing a compliance with the law as to whistling, and the instruction properly authorized a recovery on the issue (on which there was conflicting evidence) of failure to ring the bell.

6.    ———— : ———— : ————. It was not error to refuse to instruct the jury that it was plaintiff's duty to stop and look for an approaching train at a point from which the evidence shows the train would not be visible or to refuse an instruction calling for findings as to plaintiff's mental impressions when he approached the crossing when there was no evidence of such mental condition.

7.    ———— : ———— : DUTY TO LOOK AND LISTEN. Whether or not the failure to look and listen for a coming train on approaching a railroad crossing constitutes negligence depends on the attending circumstances.

———— : ———— : ———— : INSTRUCTION. Where the defendant requested the court to instruct the jury that it was plaintiff's duty upon approaching the track to constantly use his eyes and ears, it was proper for the court to amend by striking out the word "constantly."

ON REHEARING IN BANC.

9.   Railroad: CROSSING TRACK: CONTRIBUTORY NEGLIGENCE: QUES-
TION FOR JURY.   The question of the plaintiff's contributory neg-
ligence in this case in approaching and crossing the track was, in
view of all the surrounding circumstances, one for the jurors, and
the trial court did not err in submitting it as such to them.

10.   Neglect to Ring Bell and Sound Whistle: DEATH, RECOVERY
FOR.   Where a railroad neglects to ring the bell or to sound the
whistle of its locomotive at a public crossing as required by
Revised Statutes, 1889, section 2608, and the death of a person
crossing the track is thereby occasioned, a recovery of $5,000
under Revised Statutes, 1889, section 4425, is authorized.

11.   Negligence.   Negligence may consist either in a violation of
some duty imposed by the general law or of some duty imposed
by some more definite enactment.

12.   The Decision of Division Number One affirming the judg-
ment of the trial court affirmed.

*Appeal from Clinton Circuit Court.* — HON. J. M.
SANDUSKY, Judge.

AFFIRMED.

THE action is for various kinds of damages sus-
tained by plaintiff, including the death of his wife, at a
public crossing of defendant's railway, in consequence
( as is charged ) of the negligence of operatives of a
train of defendant in failing to give signal of bell or
whistle as it approached the crossing.   The defenses
are contributory negligence and the general issue.

The instructions referred to in the opinion of the
court are the following, viz. :

Given for plaintiff :   "1.   If the jury believe from
the evidence that on the eleventh day of December,
1885, the defendant's train approached the point men-
tioned in evidence, and that at such point a traveled
public road crossed the defendant's railroad ; and that
the bell of the locomotive engine which hauled said
train was not rung at a distance of eighty rods from
said crossing, and kept ringing until said engine crossed
said public road ; and that the steam whistle, attached
to said engine, was not sounded eighty rods from said

crossing ; and that plaintiff was approaching said cross-ing on said traveled public road in a buggy with his wife, and that by reason of said failure of defendant's servants upon said train to sound said whistle or ring said bell, the said engine struck the ·buggy of plaintiff while the same was crossing said public road, and killed plaintiff's wife and injured plaintiff and plaintiff's buggy ; and that at the time of said injury the plaintiff was exercising ordinary care in crossing said railroad, the jury will find for the plaintiff on each of the three counts of the petition, and assess the damages on the first count at $5,000, and on the second count at such amount as the jury believe from the evidence plaintiff has sustained by reason of the bodily injuries received by him, not to exceed the sum of $10,000, and on the third count such a sum as the jury believe from the evidence plaintiff's buggy was damaged, not to exceed $100. The term ordinary care, as used in this instruc-tion, means such care as a man of ordinary prudence would exercise under like circumstances."

For defendant : " 5. There is no evidence in this case tending to show that, after defendant's servants in charge of the train mentioned in proof discovered the perilous situation of plaintiff and his wife, they could by any means or exertions have prevented collision of the engine with plaintiff's carriage.

" 6. If the injuries complained of were the joint result of plaintiff's carelessness and lack of vigilance for his own safety, and of the failure of defendant's servants in charge of said train to give signals of approach to said crossing, then the verdict must be for defendant. If both parties were careless, neither can recover from the other on account thereof.

"7. If the injuries complained of were the result of mere accident, and if neither plaintiff nor defend-ant's servants in charge of the train committed a fault causing or contributing to the accidental collision, then

the jury will find for defendant. Neither party can be required to answer to the other for accidental mischance."

"9.    If the jury believe from the evidence that the plaintiff was well acquainted with the crossing, and the road leading thereto, and further believe that, at a point twenty-six feet from the crossing, he could have stopped his team, and from that point, if he had looked, could have seen the train approaching, and thus have averted the accident, the verdict must be for defendant."

"13. The plaintiff, in his testimony, admits that at all times before driving his team upon said crossing, he had them under perfect control.

"14.    If, by reason of any miscalculation of plaintiff as to the proximity of a train, he concluded to drive upon the crossing without further efforts to ascertain certainly whether he could safely do so, the verdict must be for the defendant."

By court itself:    "A.    Defendant had the right to run said train at any rate of speed, and to pass said crossing either on its card time, or earlier, or later, at any speed, as it or its servants in charge thereof might choose, and plaintiff was not excused from the duty to use ordinary care to ascertain the presence of said train before driving upon said track, by the fact that it was an extra train, not running on card time; nor by the fact of its running at any rate of speed shown, nor by any failure to give signals of its approach; nor by all of such facts if found by the jury.

"B.    It was the duty of plaintiff, while approaching said railroad track, and before driving upon the same, to use his eyes and ears, to look and listen for an approaching train, and if the jury believe from the evidence that plaintiff, if he had so looked and listened, could have thereby seen or heard the train in time to have avoided collision with it, and the injuries complained of, then your verdict must be for the defendant, notwithstanding the jury may further believe from the

Kenney v. The Hannibal & St. J. Ry. Co.

evidence that defendant's servants failed to give signals by bell or whistle of the train's approach."

Asked by defendant and refused: "4. If the jury believe from the evidence that plaintiff drove his team and carriage from a point north of, and about ninety feet distant from, the crossing, to and upon defendant's track, and, while so doing, neglected to look and listen for an approaching train, they will find for defendant, notwithstanding they may find from the evidence that defendant's servants in charge of the train in question neglected to signal the approach of the train to said crossing."

"8. If the jury believe from the evidence that plaintiff, when he approached the crossing, stopped at a point some ninety feet away, and, while passing thence to said crossing, was of the impression that no train was at that time due to pass said crossing, and that, in consequence of said impression and belief, he drove said ninety feet to and upon said crossing, having his attention directed entirely to his team, or to his personal discomfort from cold weather, or to any other subject, and that, while so driving over that space, he didn't think of, nor endeavor at all points where, by sight or hearing, he might have made observations to learn whether a train was near or not, then such conduct was negligence of plaintiff, and he cannot recover in this case."

"10. Plaintiff admits in his testimony that he neither stopped his team to listen, nor looked for the train while driving the distance of ninety feet, immediately before passing upon the track, and, for the purpose of this case, such admission must be taken as true.

"11. Defendant has the right to run said train at any rate of speed, and to pass said crossing, either on its card time, or earlier, or later, at any speed as its servants in charge thereof might choose; and plaintiff

was not excused from the duty to be alert and watchful, and ascertain the presence of said train before driving upon said track, by the fact that it was an extra train, not running on card time, nor by the fact of its running at any rate of speed shown, nor by any failure to give signals of its approach, nor by all of such facts, if found by the jury.''

"$12\frac{1}{2}$. If the plaintiff directly contributed to the causing of the injuries complained of, by failure to look and listen for an approaching train at each and all points from which such train might have been seen or heard by him, while near, and approaching said crossing and before driving upon said track, then the court instructs the jury that it would in this case make no difference whether defendant's servants were also guilty of negligence in some one or more of the particulars as alleged in the petition or not. In such case the verdict must be for the defendant.

"$12\frac{3}{4}$. It was the duty of the plaintiff, while approaching said railroad track and driving on the same, to constantly use his eyes and ears, to look and listen for an approaching train; and, if the jury believe from the evidence that the plaintiff, if he had looked and listened, could have thereby seen or heard the train in time to have avoided collision with it and the injuries complained of, then your verdict must be for the defendant, notwithstanding the jury may further believe from the evidence that defendant's servants failed to give signals by bell and whistle of the train's approach.''

The jury found for plaintiff as follows: On the *first* count, $5,000; on the *second* count, $1,600; on the *third* count, $100; total, $6,700; and afterwards there was a judgment rendered accordingly from which defendant appealed after the usual steps.

One of the main questions is whether or not plaintiff should have been forced to a nonsuit because of the contributory negligence ascribed to him by defendant.

The substance of the evidence on his part, bearing on this issue, is this: Plaintiff was familiar with the place, having lived for many years near by, and having had occasion to pass it frequently. The railway there ran east and west. The highway crossed it at a right angle. Plaintiff was coming from the north. The train whose engine struck his buggy came from the east. It was an "extra" running "wild;" that is to say, it had orders to pass every way station without stopping, unless signaled to stop.

The highway, approaching the railway from the north, crosses a creek about one hundred and twenty feet from the track, and some eight or ten feet below it, thence runs up an incline some thirty feet, where there is a short level space in the road (about ninety feet from the rails), after which the ascent gradually continues to a point some twenty feet from the crossing, where there is a slight decline until the track is reached.

The highway passes through a cut, which, as it nears the railway, becomes narrower, until only about six feet in width. Close to the crossing the banks on both sides of the road are about five feet above it. Twenty feet to the north they are about four feet high, and fifty feet to the north they are five feet high on both sides.

The railway also approaches from the east through a cut, which is about five feet deep at the crossing. At sixty-eight feet east of the crossing this cut is ten feet deep on the north side of the track and sixteen feet deep on the south side. The railway eastward curves toward the south, commencing near a tank, four hundred and seventy feet east of the crossing. Timber stood on both sides of the highway from the creek until near the top of the hill, and there was a plank post fence, three to five feet high, on the east side of, and parallel to, the road along the top of the bank to a point some ten feet from the track.

The accident happened on a dark and cloudy day in December, 1885, about ten o'clock, A. M. The ground was frozen and there was a little snow around. Plaintiff was on the way with his wife to Cameron, Missouri, in a top buggy, drawn by two well-broken but spirited horses.

His statement is that the side curtains of the buggy were down a part of the way, but he could see out on either side without leaning forward ; that he stopped at the creek, and got out to fix the reins and there listened for a train ; heard nothing ; then drove to the level spot in the road, ninety feet from the track, stopped again and listened ; heard nothing ; "did not look for trains at this point because I could not see, a train coming from any direction ;" "before you can see you have to get up the hill ;" "you cannot see a train from the point where I last stopped, nor until you get near the track ;" when he got in view of the track he looked west and saw nothing, his team meanwhile going forward, then he looked east and the train was "almost on top of me ; my horses' hind feet were almost over the crossing and the front wheels of my buggy were about on the crossing ;" he hit the horses to hasten them over, but before clearing the way the engine running at twenty-five miles an hour caught the buggy, upset it, threw him and his wife out, and demolished the vehicle.

Another witness for plaintiff testified after describing the premises, that "a person approaching the crossing in an ordinary buggy would have to be almost up to the railroad track before he could see a train coming from the east ; there is a point twenty-one feet north of the crossing where the cut is only four feet deep ; if he could see a train coming from the east at any point it is there ; he would not get clear of the obstruction made by the cut until within six or eight feet of the railroad crossing." Besides the plaintiff several witnesses, at different points near by, who had observed the train,

gave evidence tending to show that no signals by bell or whistle were given, as it approached.

In consequence of the collision, plaintiff's wife sustained injuries causing her death, which forms the basis of the first count of plaintiff's petition under the statute. R. S. 1889, sec. 4425; Sess. Acts, 1885, p. 153. He received personal injuries himself, for which the second count claims damages; and in the third section of the petition the destruction of his buggy is counted upon and compensation prayed therefor. The other facts appear in the opinion, so far as necessary to an understanding of the points discussed.

*Thomas E. Turney* and *Strong & Mosman* for appellant.

(1) The court erred in giving to the jury the instruction prayed by plaintiff. It purports to submit in one instruction all the facts necessary to be found by the jury to authorize and sustain a verdict for plaintiff on each and all three counts of the petition. *First.* It does submit to the jury facts not pleaded in any one of said three counts, contrary to the ruling of this court in *Melvin v. Railroad,* 89 Mo. 106; *Kenney v. Railroad,* 70 Mo. 255; *Ely v. Railroad,* 77 Mo. 36; *Buffington v. Railroad,* 64 Mo. 246; *Carson v. Cummings,* 69 Mo. 325; *Weil v. Greene Co.,* 69 Mo. 281. "It is familiar law that an issue not made in the pleadings or in some appropriate way cannot be thrust into the cause by instructions asked by a party." *Nall v. Railroad,* 97 Mo. 75; *Ely v. Railroad, supra,* and cases cited. *Second.* The instruction did not confine the jury to the specific grounds of negligence alleged in the petition. *Schlereth v. Railroad,* 96 Mo. 515; *Merritt v. Poulter,* 96 Mo. 240. *Third.* This instruction was erroneous, in that it authorized recovery without requiring the jury to find an essential fact in the case upon which plaintiff's right to recover depended. *Birtwhistle v. Woodward,* 95 Mo. 117-8. The action is under section

806, Revised Statutes, 1879. The defendant complied with the law, if it gave either one of the signals as required by the statute. *Van Note v. Railroad*, 70 Mo. 641; *Turner v. Railroad*, 78 Mo. 578. And was not liable unless it entirely failed in both these particulars. *Halferty v. Railroad*, 82 Mo. 97. The instruction authorized recovery by plaintiff without requiring the jury to find that the defendant failed to sound the whistle at intervals while passing over the last eighty rods before passing over the crossing. This was reversible error. *Birtwhistle v. Woodward, supra. Fourth.* The first instruction for plaintiff was vague and erroneous, because the question of what is ordinary care in a case of this kind is matter of law, and has been so declared by repeated decisions of this and other courts of last resort. Beach on Cont. Neg. [1 Ed.] pp. 191-2, sec. 63, and cases there cited; *Henze v. Railroad*, 71 Mo. 637; *Zimmerman v. Railroad*, 71 Mo. 476; *Stepp v. Railroad*, 85 Mo. 229; *Donohue v. Railroad*, 91 Mo. 357; *McGrath v. Railroad*, 59 N. Y. 468; *Gurley v. Railroad*, 93 Mo. 445. *Fifth.* This instruction is bad, because it only required the exercise of ordinary care "while crossing said railroad." The law also requires that he shall exercise care while approaching the railroad and before attempting to cross. *Hart v. Railroad*, 87 Ill. 529, approved in *Zimmerman case, supra. Sixth.* This error is not cured by instruction "B," given on the court's own motion. *Scovill v. Glasner*, 79 Mo. 457. (2) The court erred in refusing the defendant's instructions 1, 2 and 3, being demurrers to the case made on the several counts. Plaintiff's testimony and that of his witnesses, confirmed by all the testimony of defendant's witnesses, proved that plaintiff was guilty of contributory negligence, proximately causing his injuries. *Donohue v. Railroad*, 91 Mo. 363. He knew the location and surroundings, and that a train might be expected at any time; knew the difficulties in seeing; was aware of the obstructions to hearing made by

his wagon running over the frozen ground. His witnesses heard the train three-fourths of a mile away. *O'Connor v. Railroad*, 94 Mo. 156. It was his duty, under these circumstances, to stop and listen. *Stepp v. Railroad*, 85 Mo. 235; *Zimmerman Case*, 71 Mo. 476. He had no right to say that he would rely upon the servants of defendant obeying the rule as to signals, and venture on the crossing, until he had first performed the duty imposed upon him by law. *Lenix v. Railroad*, 76 Mo. 91; *Powell v. Railroad*, 76 Mo. 82; *Harlan Case*, 64 Mo. 480. See especially on this point, *Kelley v. Railroad*, 88 Mo. 546; *Taylor v. Railroad*, 86 Mo. 462, and cases cited. There is no presumption of fact in plaintiff's behalf, as in *Petty's case*, 88 Mo. 306. The facts as to his conduct are all in the testimony. He did not, as was done by plaintiff in *Johnson v. Railroad*, 77 Mo. 546, stop at a point where he could see the track for a considerable distance and look and listen for a train. "According to the plaintiff's own version of the accident, under the doctrine laid down in the cases of *Henze*, supra, and *Turner v. Railroad*, 74 Mo. 602, he was guilty of such contributory negligence and disregard of the surroundings as not to entitle him to recover." *Hixson v. Railroad*, 80 Mo. 340. (3) The court erred in refusing defendant's instruction marked "12¾," and in giving, on its own motion, instruction marked "B." (4) The court erred in overruling defendant's objection to the evidence and its motion in arrest.

*Stephen S. Brown, J. F. Harwood* and *William A. Wood* for respondent.

(1) The facts stated in the petition in each count of the same are sufficient to sustain the verdict upon the issues submitted in the instruction. *Sullivan v. Railroad*, 97 Mo. 113; *Grove v. Kansas City*, 75 Mo. 672; *State v. Williams*, 77 Mo. 463; *Edmondson v. Phillips*, 73 Mo. 57: *Bowie v. Kansas City*, 51 Mo.

454; *Shaler v. Van Wormer*, 33 Mo. 386; *Chouteau v. Gibson*, 76 Mo. 38. (2) Failure to ring the bell or to sound the whistle upon a locomotive engine as prescribed by the statute, or to do any other act required by law to be done for the safety of the public, is negligence as a matter of law. *Petty v. Railroad*, 88 Mo. 306; *Karle v. Railroad*, 55 Mo. 476; *Backenstoe v. Railroad*, 23 Mo. App. 148; *Stafford v. Railroad*, 22 Mo. App. 333; *Fortune v. Railroad*, 10 Mo. App. 252; *Kimes v. Railroad*, 85 Mo. 611. (3) If the petition states a cause of action, however defectively, or if it would be good after verdict, or on motion in arrest, then its defects cannot be reached by objection to the introduction of any evidence. *Roberts v. Walker*, 82 Mo. 200-206; *Grove v. Kansas City*, 75 Mo. 672. (4) The well-settled rule in such cases is this: If a matter material to the plaintiff's cause of action be not expressly averred in the petition, but the same is necessarily implied from what is expressly stated therein, the defect is cured by verdict; the doctrine resting on the presumption that the plaintiff proved on the trial the fact insufficiently averred, the existence of which was essential to his right of action. *Shaler v. Van Wormer*, 33 Mo. 386; *Grove v. Kansas City*, 75 Mo. 672; *Bowie v. Kansas City*, 51 Mo. 454; *Edmondson v. Phillips*, 73 Mo. 57. (5) And the analogy of this rule is carried so far by this court that where the answer sets up new matter which constitutes a defense, and the plaintiff neglects to reply, and the defendant goes to trial without objection, the case will be treated as if the new matter had been properly denied. *Howell v. Reynolds Co.*, 51 Mo. 154; *Simmons v. Carrier*, 68 Mo. 421; *State v. Williams*, 77 Mo. 463; *Henslee v. Cannefax*, 48 Mo. 296. (6) The instruction given for plaintiff does not require the jury to find that the defendant failed to sound the whistle at least eighty rods from the crossing; besides there is no pretense even in defendant's evidence that the engineer whistled as much as eighty rods from the

crossing. (7) Instructions asked by defendant and refused were properly refused. (8) The " presumption of due care always obtains in favor of a plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another." *Buesching v. Gaslight Co.*, 73 Mo. 219 ; *Petty v. Railroad*, 80 Mo. 306 ; *Parsons v. Railroad*, 94 Mo. 294. (9) Contributory negligence is to be pleaded and proven as a matter of defense. *Parsons v. Railroad, supra; Buesching v. Gaslight Co., supra; Huckshold v. Railroad*, 90 Mo. 548 ; *Donovan v. Railroad*, 89 Mo. 147 ; *Harrison v. Railroad*, 74 Mo. 364. ( 10 ) The statute requires the train men to begin ringing the bell or sounding the whistle eighty rods from the crossing, for the evident purpose of giving the traveler such timely notice of the approach of the train as will enable him to stop at a safe distance from the track and permit it to pass. In determining the safest course to pursue, he has the right to presume that the railroad company will obey the law, and give the prescribed signals at the prescribed place. *Johnson v. Railroad*, 77 Mo. 546 ; *Donohue v. Railroad*, 91 Mo. 357 ; *Kennayde v. Railroad*, 45 Mo. 255 ; *Eswin v. Railroad*, 96 Mo. 290. ( 11 ) Even should the traveler hear the rumbling of the train upon which no bell is ringing nor whistle sounding he would have the right to rely on the fact that it had passed the crossing and was going from him, or that it had not yet arrived within eighty rods of the crossing. *Petty v. Railroad, supra.* ( 12 ) And it would clearly be his duty to do so were he in such a position that it would be dangerous for him to permit the train to pass him. Even were it admitted that the plaintiff neither stopped, looked nor listened for the train at any point, it would still be a question for the jury whether or not he would have seen or heard it had he so stopped, looked or listened. *Johnson v. Railroad, supra ; Petty v. Railroad, supra; Donohue v. Railroad, supra.*

DIVISION ONE.

BARCLAY, J.—All the counts of the petition may be treated together, as the substantial issues arising upon each, are the same.

I.   It is claimed by defendant that plaintiff was guilty of such contributory negligence in the circumstances as required the trial court to instruct the jury to find for the defendant.

The statute requiring a certain signal of bell or whistle, by an engine approaching a crossing of any public road, declares that, in event of failure to give such signal, the railway corporation shall be liable "for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section; *provided, however*, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury." R. S. 1889, sec. 2608; Sess. Acts, 1881, p. 79.

This section shifts the burden of proof to the defendant as to the cause of such injuries as those here shown, sustained at public crossings, when no statutory signal has been given. But it does not change the established rule that if the plaintiff's proof, in any case of this nature, discloses that the damages, for which redress is sought, resulted from another cause than the negligence of defendant in omitting the required danger signal (for example from plaintiff's own want of ordinary care), there can be no recovery.

The statute does not absolve persons approaching a public railway crossing, from exercising common prudence to avoid danger nor shift the responsibility to another, should injury ensue from a failure to exercise it.

In determining the issue of contributory negligence there is no inflexible formula to apply to all cases.

Each must be ruled in view of the peculiar characteristics it exhibits. Acts, which in one state of circumstances might be justly pronounced obviously and conclusively negligent, may be consistent with ordinary prudence in a changed condition of the surroundings.

The case before us, in its present form, calls for an expression of opinion whether the plaintiff's conduct in approaching and crossing the track was negligent as a matter of law. To warrant us in reversing the finding ( by the trial court ) that he was not, we must be satisfied that no other conclusion than that of plaintiff's negligence in the premises is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it. *Huhn v. Railroad* ( 1877 ), 92 Mo. 440 ; *Mauerman v. Siemerts* ( 1879 ), 71 Mo. 101.

The particulars of plaintiff's action and the appearance of the vicinity are fully set forth in the foregoing statement of the case, and need not be repeated.

It will be noted that the plaintiff stopped twice to listen for a train ; first, at a distance of one hundred and twenty feet, and, afterwards, at ninety feet from the track. He heard nothing. Assuming the truth of his evidence ( as the present *status* of the litigation requires ), it is obvious that, had the signal been given by defendant, he would have been warned of the coming train in time to escape harm. His course, after his second stop, lay along a line which did not permit a view of a train until very near the track ; according to his personal evidence until within a few feet of it, and, according to other evidence on his behalf, until twenty-one feet from it. When he, seated in the buggy, drawn by a double team, was at that distance, the horses necessarily were much closer to ( probably within ten feet of ) the rails, and moving forward at a brisk walk. He turned toward the west looking for a train, and, seeing none, turned eastward and discovered the engine close upon him. His horses were then nearly

across the rails so he struck them at once to hurry them forward, but the buggy did not clear the track in time to escape disaster, and the injuries followed as stated. Here plaintiff seems to have been looking and listening for danger at various points along the road. He could not look both ways at the same time when he reached the first point of clear observation. It so happened that he looked west, first, on reaching it, instead of east, and that when he looked east, in passing over the short space to the track, it was too late to be of any avail ; but his action in the premises was not such as to indicate such recklessness or want of caution as would constitute negligence as a matter of law. We are not prepared to say that his conduct was different from what the man of average prudence would do in the same circumstances.

He was under no legal obligation to shape his action on the theory that the defendant would disregard the plain requirements of law respecting a signal of its coming train. He was confronted with peculiar conditions, shown by the topography of the crossing, and was bound to use such care as would ordinarily be exercised by an intelligent man amid such surroundings. Whether he did so or not, was a question of fact on the case here made. *Johnson v. Railroad* ( 1883 ), 77 Mo. 546 ; *Kellogg v. Railroad* ( 1879 ), 79 N. Y. 72 ; *Greany v. Railroad* ( 1886 ), 101 N. Y. 419 ; *Davis v. New York Cent., etc., Co.* (1872 ), 47 N. Y. 400 ; *Randall v. Railroad* ( 1882 ), 132 Mass. 269 ; *Tyler v. Railroad* ( 1884 ), 137 Mass. 238. The trial court did not err in refusing to give an instruction that plaintiff could not recover.

II. By one of the instructions ( number 1 ) given for plaintiff, against defendant's exception, the court declared the law to be that if the jury found the engine bell was not duly rung ( as required by the statute), "and that the steam-whistle attached to said engine was not sounded eighty rods from said crossing," etc., then

(with the other necessary facts) there should be a verdict for plaintiff.

It is claimed that this is erroneous as requiring the whistle to be sounded exactly eighty rods from the crossing whereas the statute reads, "at least eighty rods from the place where the railroad shall cross," etc. Sess. Acts, 1881, p. 79.

The giving of warning by either bell or whistle will answer the demand of the law. *Van Note v. Railroad* (1879), 70 Mo. 641. If there was evidence before us of a compliance with the statute, in regard to whistling, we should be obliged to consider the point above noted. But there is not. Defendant's locomotive engineer testified that he sounded the whistle "about eighty rods east of the crossing," and others on the same side corroborated him; but neither he nor any witness for defendant asserted that the whistle had been thereafter sounded at intervals until reaching the crossing. On that point there is a complete blank in the evidence.

On plaintiff's part there was considerable testimony that no signal of bell or whistle was given. On the other hand there is abundant evidence for defendant, showing the proper ringing of the bell. On that point the instruction mentioned is not challenged. But defendant's own testimony has no tendency to show that the whistle was sounded as prescribed, and, therefore, the instruction, in the particular mentioned, cannot furnish a ground for reversal, having regard to the statutes which direct us to disregard irregularities in the proceedings "which shall not affect the substantial rights of the adverse party" (R. S. 1889, sec. 2100), and not to reverse a judgment for any error unless we believe it is one "materially affecting the merits of the action." R. S. 1889, sec. 2303.

III. Defendant complains of the refusal of the trial court to instruct as asked in the refused requests, numbered 4 and 8 (copied in the statement). These declarations are framed with the evident purpose of

indicating what acts of plaintiff in the circumstances would amount to legal negligence. The court in other instructions told the jury plainly that it was plaintiff's duty to use ordinary care in crossing the railroad (instruction, numbered 1), and further (in substance, see instruction B) that he was bound to use his eyes and ears to look and listen for an approaching train, and that if he failed to do so, and the injury thereby resulted, the verdict should be for defendant. This was quite as favorable to defendant as established principles of law justified.

The true legal rule is that one approaching a railway crossing must exercise reasonable and ordinary prudence to avoid the danger necessarily to be apprehended there. It may often be that a failure to look and listen for a coming train will be such obvious negligence as to warrant a court in so declaring, but circumstances may exist in which the failure to look and listen cannot justly be so regarded. No procrustean standard of negligence, predicated on a failure to look and listen, exists.

For example, the refused instruction, numbered 4, seeks to declare it conclusive negligence, if plaintiff, in passing over the ninety feet between his last stop and the track, neglected to look and listen for a train, whereas his evidence was that "you cannot see a train from the point where I last stopped, nor until you get near the track."

The refused instruction, numbered 8, is faulty in several particulars, chiefly in calling for findings, which there was no evidence to support, of plaintiff's mental impressions in approaching the crossing. It need not be further discussed.

IV. The modification made in defendant's request, numbered 12¾ (given by the court as instruction B), consisted merely in the elimination of the word "*constantly*," as applied to plaintiff's duty to use his eyes and ears in approaching the track. Plaintiff

was legally bound to exercise ordinary care in the premises, as we have already said, and if to "constantly use his eyes and ears," as suggested in the instruction refused, imposed a higher duty than that upon him (as we think it was intended to do), it can not be approved. *Terre Haute & I. Ry. Co. v. Voelker* (1889), 129 Ill. 540, followed in *Chicago M. & St. P. Ry. Co. v. Wilson* (1890), 133 Ill. 55.

The foregoing remarks dispose of all the assignments of error which appear to merit notice.

The judgment is affirmed; SHERWOOD, C. J., dissents; BLACK and BRACE, JJ., concur.

### ON REHEARING IN BANC.

BARCLAY, J.—This cause has been thoroughly reargued before the court *in banc*, and the conclusion we have reached will be announced in a few words.

Defendant's chief point now is that the case should not have been submitted to the jury, the plaintiff's conduct being claimed as negligent as a matter of law.

A majority of the court *in banc* adhere to the conclusion reached and the views expressed in the opinion of division number 1 on this point. To what was then said we may add that the testimony of defendant's engineer (in charge of the locomotive that struck plaintiff's buggy) appears to corroborate plaintiff's witnesses in their statement of the difficulty of observing a coming train from plaintiff's position.

The engineer said: "When we got almost to the road crossing, I saw a team coming right on the rails, the horses' forefeet just inside the north rail. The horses shied off to one side. I saw a man stick his head out of the buggy, look up, and then struck his horses with the lines, or may be a whip. The engine caught the buggy. When I first saw them we were about thirty feet from crossing, and were running about twenty-five miles per hour." And, on cross-examination, he added: "I was looking forward, out of my cab window, on the

north side of engine, when I first saw Kenney. This is my side of the engine cab. The window in front of me is on the right-hand side of the boiler, and I looked through it. The first I saw he was coming on the track. I immediately shut my engine off and called for brakes, and we stopped about forty or fifty carlengths west of the crossing.''

From this statement of the engineer, whose position in the cab placed him considerably above the level of plaintiff's buggy, it is evident that the surroundings of the point of crossing are very unfavorable to a view of the track or of the highway from each other. If the engineer, on the lookout, could not observe plaintiff's buggy till the engine was within thirty feet of the crossing, it is a mere matter of easy calculation to show that plaintiff's team must then have been within seven or eight feet of the rails. He was moving at four or five miles an hour. At the higher rate, he would cover a little less than seven and one-half feet each second, while the engine (at the rate of twenty-five miles an hour) would pass over the thirty intervening feet in five-sixths of a second. So, when first seen by the engineer, plaintiff's team must have been just clearing the cut referred to particularly by the plaintiff's witness, who said that ''he would not get clear of the obstruction made by the cut until within six or eight feet of the railroad crossing.''

The engineer was at his post, on the side of the cab from which plaintiff was approaching, and, if he could not see the buggy until five-sixths of a second before reaching the point of crossing, it is measurably clear that the man in the buggy could not have seen the engine much sooner. We mention the above, with the facts previously stated, merely to furnish another view of this crossing, whose peculiarities have an important bearing on the merits of the case. We are of opinion that the question of plaintiff's alleged contributory negligence, in view of all the surroundings, was fairly one of fact

Kenney v. The Hannibal & St. J. Ry. Co.

for the jury, and that the trial court did not err in submitting it, as such, to them.

II.   Defendant next contends that, as the negligence charged is predicated on a breach of the duty imposed by section 2608 ( R. S. 1889), which declares a liability " for all damages which any person may hereafter sustain at such crossing, when such bell shall not be rung or such whistle sounded, as required by this section," there should be no recovery of the $5,000 ( mentioned in section 4425) for the death of plaintiff's wife ; and that plaintiff's damages in such case should be compensatory only.

The answer to this contention is that section 4425 is especially intended to reach cases where death ensues by reason of the facts therein described, and, among them, cases where such death is caused by any sort of negligence whilst running any locomotive or train of cars.

Negligence, under that section, may consist either in a violation of some duty imposed by the general municipal law of the land, or of some duty imposed by some more definite enactment ( for example, by section 2608 ).   The term "damages," in section 2608, includes damages accruing under section 4425 ( R. S. 1889) where death results, in the circumstances described in the latter, from negligence consisting of the failure to give the signals mentioned in the former.

This was expressly ruled by this court in the very recent case of *Crumpley v. Railroad* ( 1889 ), 98 Mo. 34.   We, therefore, do not now consider it necessary to do more than restate the conclusion then announced on this point.

III.   Regarding the rulings upon the instructions and other details of exception at the trial, we coincide with the former opinion delivered in this cause, and agree to overrule the motion for rehearing and to affirm the judgment.   All concur, except SHERWOOD, C. J., who dissents.