*J. B. Carroll & W. H. McClintock,* for the plaintiff.

*W. H. Brooks & W. Hamilton,* for the defendant.

---

EMMA DALTON *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

SARAH A. DALTON *vs.* SAME.

JOHN L. SLANEY *vs.* SAME.

ALICE SPENCE *vs.* SAME.

Hampden.    September 22, 23, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* At railroad crossing.

In actions against a railroad company for personal injuries, from a collision at a grade crossing in Connecticut with an electric car operated by the defendant, it appeared, that by the law of Connecticut the electric car was required to sound a whistle and gong when approaching the crossing, that the plaintiffs were driving in a "canopy top wagon", about nine o'clock on a cloudy evening, that there were two tracks at the crossing, one used for steam cars and the other for electric cars, that the plaintiffs saw a freight train approaching and, after it had passed, drove within fifty feet of the crossing, listening for signals from an electric car which was due about that time, that, after stopping there a minute and a half or two minutes, the horse became restless and started of his own accord for the crossing, on which the smoke from the freight train had settled down, that at the crossing the plaintiffs listened for signals, and, hearing none, started to cross and were struck by the electric car going at a speed of about twenty-five miles an hour, that when the plaintiffs arrived at the crossing they were for the first time aware of the serious interruption to their view caused by the smoke, and that while stopping there they had reason to think that the smoke would not disappear quickly. *Held,* that, on this and other evidence, the questions whether the signals required by law were given by the defendant, whether the failure to give them contributed to the accident, and whether in approaching the crossing and attempting to cross it the plaintiffs were in the exercise of due care, were for the jury.

FOUR ACTIONS OF TORT for personal injuries from a collision at a grade crossing at Forestville in Connecticut with an elec-

tric car operated by the defendant.    Writ dated October 1, 1902.

At the trial in the Superior Court before *Maynard,* J., the jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*W. S. Robinson,* for the defendant.

*J. B. Carroll,* for the plaintiffs.

HAMMOND, J.    The defendant's theory of this accident is that the whistle and gong of the electric car were sounded as required by law, that at a time when the view of the third rail track was obstructed by the freight train and by the smoke from the engine so that the plaintiffs could not see whether or not an electric car was approaching, and while the noise of the train was so great as'to lessen very much the chances of hearing the sound of the signals, the plaintiffs, without waiting for these temporary hindrances to sight and hearing to disappear, and indeed without looking or listening, entered upon the crossing and attempted to pass over it immediately after the caboose of the train had cleared the highway.    It must be said that there was much evidence direct and indirect to support this theory, and it might reasonably have been expected that the jury would adopt it.    Upon such a theory a verdict for the defendant would have been the necessary result.

But it must also be said that, if the evidence for the plaintiffs was believed, the jury were warranted in rejecting this theory. The crossing was in the State of Connecticut, and, in accordance with the law of that State, the jury were instructed in substance that the defendant could not be found negligent if the whistle and gong of the electric car were sounded as required by the statutes of that State.    Upon the question whether they were so sounded, the evidence, as is quite usual in cases of this nature, was conflicting, witnesses called by the defendant positively testifying that the signals were given and witnesses called by the plaintiffs testifying that they listened for the sounds and did not hear them.    The evidence on this question need not be rehearsed in detail.    It is plain that under our decisions it raised a question of fact for the jury.    In this respect the case is clearly distinguishable from cases like *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, and *Hubbard* v. *Boston & Albany Railroad,* 159 Mass.

320, 323, and must be classed with those like *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386, and *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532. If the signals were not given, then the defendant might have been found negligent, and upon the whole evidence the jury might have concluded that this negligence was contributory to the accident.

The more difficult question is whether the evidence was sufficient to warrant the finding that the plaintiffs were in the exercise of due care. Many of the facts are not in dispute. The four plaintiffs were in an open "canopy top wagon," which with the single horse attached had been hired at a livery stable by Slaney for that ride; and he was driving. There were two tracks at the crossing, the southerly being used only for the cars propelled by steam and the northerly, called the third rail track, being used only for the electric cars. A little after nine o'clock in the summer evening the plaintiffs were in the vicinity of this crossing; and, as they were approaching it from the south and were opposite the house of one Davitt, which was about two hundred and fifty feet from it, they observed a west bound freight train approaching it from the east. After the train had passed over, Slaney drove to the crossing, and as he reached the northerly track his team was struck and overturned by an electric car which came from the west at a speed of about twenty-five miles an hour. Going westerly from the crossing, the grade of the track ascends, and the engine after passing the crossing emitted considerable smoke which settled upon the third rail track, thus more or less obscuring the plaintiffs' view. Slaney was familiar with the crossing and knew that an electric car was scheduled to reach it from the west shortly after nine o'clock. He testified however that at the time he thought it was hardly time for the car to reach there. Both the highway and the railway tracks were above the surface of the adjacent ground, and to one standing in the highway there were no permanent objects to obstruct the view of the tracks for a distance of several hundred feet either side of the crossing. The evidence introduced for the plaintiffs tended to show that they stopped opposite Davitt's house "two minutes or so"; that during that time the freight train was passing the crossing, and that they were looking up and down the track and listening for signals; that at that time

the engine was puffing and emitting considerable smoke; that before the train had entirely passed the crossing they started and drove to within fifty feet of it, looking during the time and listening for signals from the electric car; that they then stopped "probably a minute and a half or two minutes," and again looked and listened for the signals; that while stopping there the caboose passed the crossing and immediately the horse, which had become somewhat restless, started of its own accord for the crossing; that Slaney stopped the horse when its head was possibly over the first rail of the southerly track; that while there the plaintiffs looked down the track towards the west; that the smoke from the engine "settled right down on the third rail track" up to within fifty feet of the crossing; that while there they listened for signals from the electric car but could hear none, and then, believing the track to be clear, they started to cross, and just as the horse reached the northerly track the light of the electric car "came right out of the cloud," three sharp whistles instantly sounded, and the team was struck. The evidence introduced by the plaintiffs tended further to show that the night was dark and cloudy; that while the plaintiffs were stopping at the southerly track the freight train had passed so far that the view of the third rail track was no longer obstructed by that train but only by the smoke and the darkness; that there was but little, if any, wind; that upon getting to the southerly track the plaintiffs were for the first time aware of the serious interruption to the view caused by the smoke, and that while stopping there they had reason to think that it would not quickly disappear. In this position, with a horse which already had manifested some symptoms of uneasiness which might lead to some apprehension as to what it might do, the plaintiffs, according to their own testimony, looked as well as they could and listened, and, hearing no whistle or gong, thought that there was no electric car and that it was better to cross than to wait for the lagging smoke to rise.

Under all the circumstances of the case, the question whether the plaintiffs were in the exercise of due care in approaching the crossing and in attempting to cross it without waiting for the smoke to disappear, was for the jury. The case must stand with cases like *Randall* v. *Connecticut River Railroad*, 132 Mass. 269,

and not with those like *Debbins* v. *Old .Colony Railroad*, 154 Mass. 402. We see no error in the way the court dealt with the requests for instruction.

*Exceptions overruled.*