JOHN A. FITZHUGH *vs.* BOSTON AND MAINE RAILROAD.
AGNES A. FITZHUGH *vs.* SAME.

Essex.    March 1, 1907. — April 3, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence.   Railroad.*

In an action against a railroad company for personal injuries from a collision at a grade crossing of a highway with a locomotive engine of the defendant alleged to have been caused by a failure of the defendant to give the signals required by law, there was evidence that the plaintiff, who had lost the sight of one eye, was driving in a buggy a horse which was afraid of steam cars although otherwise gentle, that there was a single track of the railroad at the crossing, that from the direction in which the plaintiff was driving the street crossed the railroad at an acute angle, that, as he approached the crossing, his view at some points was obstructed considerably by buildings and trees, that, until he was within one hundred and fifty or two hundred feet of the crossing, he was driving at the rate of about seven miles an hour and looked ahead to see or hear any train, that he then slackened speed, leaned forward to ascertain whether he could see or hear anything of an approaching train and also looked down the road for some sign of the flagman who was stationed there, that, seeing no flagman and hearing and seeing nothing of a train, he proceeded to the crossing and when within fifteen or twenty feet of the track, or a little closer, he saw the flagman, who made an outcry, that at the same time he felt the jar of the approaching train and immediately the accident occurred. *Held,* that the question whether the plaintiff was in the exercise of due care was one for the jury.

In this Commonwealth there is no rule of law requiring a traveller upon a highway before passing over a railroad grade crossing unvaryingly and without exception to stop, look and listen. The rule is that he must exercise the high degree of care which the extreme danger of the place requires from every person of ordinary prudence. Generally he must look and listen in such a way as will enable him to ascertain with reasonable certainty whether a train is approaching.

In an action against a railroad company for personal injuries from a collision at a grade crossing of a highway with a locomotive engine of the defendant alleged · to have been caused by a failure of the defendant to give the signals required

by law, where the evidence as to whether the statutory signals were given is conflicting, if the plaintiff testifies that he was listening for the signals and did not hear them and there is a slight corroboration of this testimony from another witness, the question whether the signals required by law were given by the defendant is for the jury.

In an action against a railroad company for personal injuries from a collision at a grade crossing of a highway with a locomotive engine of the defendant alleged to have been caused by a failure of the defendant to give the signals required by law, where it appears that the plaintiff was driving in a buggy a horse which was afraid of steam cars although otherwise gentle, the fact that the collision occurred at the side of the locomotive a few feet behind the pilot is consistent with a finding that it was caused by the failure of the defendant to give due warning of the approach of the train, so that the plaintiff could not control his horse in time to avoid injury.

RUGG, J.   These are actions of tort to recover damages alleged to have been sustained by a collision, at a grade crossing on Elm Street in Amesbury, of a train of the defendant with a top buggy owned by the plaintiff Agnes, who seeks to recover damages to property, and being driven by the plaintiff John, who sues for personal injuries.   A verdict was returned for the plaintiff in each case.   The cases come before us on exceptions to the refusal of the Superior Court to grant certain rulings requested by the defendant.   There was testimony tending to show that John A. Fitzhugh (who will hereafter be referred to as the plaintiff) had been a physician in practice for many years in the town where the accident occurred, was familiar with the crossing, having often passed over it, and was in the full possession of his faculties except that he had no sight in his left eye.   Just before twelve o'clock in the forenoon of a cold and windy December day, he was driving along Elm Street toward this crossing with a horse which, although kind in other respects, was afraid of steam cars.   The grade of the street approaching the crossing was slightly descending, until within one hundred and fifty to two hundred feet of the crossing, when it began to rise; the railroad crossed Elm Street at an acute angle, and the plaintiff was driving toward the crossing on the acute side of the angle; as he approached the crossing his view was considerably obstructed at some points by buildings and trees.   Until he came within one hundred and fifty to two hundred feet of the crossing he was driving about seven miles an hour and looked ahead to see or hear any train; he then slacked up and leaned forward and looked to ascertain if he could see or hear anything

of an approaching train, and he also looked down the road for some sign of the flagman, who was stationed there; not seeing the flagman or hearing or seeing anything of a train, he proceeded to the crossing; when within fifteen or twenty feet, or a little closer, to the track, he saw the flagman with his flag rolled up in his right hand, who then made an outcry, and at the same time he felt the jar of the approaching train, and the accident occurred immediately. There was much evidence introduced by the defendant tending to show that the whistle was blown and the bell rung as required by law, and that the flagman was in position attending to his duty. As to many of the circumstances the testimony was conflicting and a verdict for the defendant might reasonably have been expected. There is in this Commonwealth no rule of law, which forces a traveller upon a highway unvaryingly and without exception to stop, look and listen before passing over a railroad grade crossing. He must exercise that high degree of care, which the extreme danger of the place requires of every person of ordinary prudence. He must generally look and listen in such a way as will enable him to ascertain with reasonable certainty whether a train is approaching. Circumstances may be such as to compel the inference that the traveller did not exercise these precautions, whatever may be his testimony. *Raymond* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 337. *Rogers* v. *Boston & Maine Railroad,* 187 Mass. 217, 219. This case does not fall within that rule. There was a single track of the railroad at the crossing. Upon his own testimony the plaintiff, for a reasonable distance before reaching the crossing, was on the lookout for the train and depended upon his own sight and hearing, his watch for the flagman, and the action of his horse, which was sensitive to the approach of a train, to advise him if he was in danger, and he received no warning through any of these channels, until it was too late. It cannot be said, therefore, as matter of law, that the plaintiff was not in the exercise of due care. *Brusseau* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 84. *Clark* v. *Boston & Maine Railroad,* 164 Mass. 434. *Evenson* v. *Lexington & Boston Street Railway,* 187 Mass. 77.

As to whether the statutory signals were given, the evidence was conflicting. The plaintiff, however, testified that he was lis-

tening for the signals and did not hear them, and there was slight corroboration to this testimony from one Norton. This raised a question of fact. *Dalton* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 344. There were indications that, although the collision occurred at the side of the locomotive a few feet behind the pilot, this may have arisen from the failure of the defendant to give due warning of the approach of the train, so that the plaintiff could not seasonably control his horse in such a way as to avoid injury. *Pollock* v. *Eastern Railroad,* 124 Mass. 158. There was conflicting evidence as to the negligence of the flagman, and it was a question of fact for the jury.

*Exceptions overruled.*

The case was submitted on briefs.

*H. F. Hurlburt & D. E. Hall,* for the defendant.

*J. P. Sweeney, H. R. Dow & L. S. Cox,* for the plaintiffs.