SARAH A. PEABODY *vs.* HAVERHILL, GEORGETOWN AND
DANVERS STREET RAILWAY COMPANY.

DANIEL A. PEABODY *vs.* SAME.

Essex.    November 6, 1908. — November 25, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Street railway, Imputed.    *Infant.    Parent and Child.*

In an action by a woman against a street railway company for personal injuries
alleged to have been received from being thrown from a buggy when it was run
into by an electric car of the defendant, there was evidence tending to show
that the buggy was a Goddard buggy and was the property of and was being
driven by a son of the plaintiff, who was twenty years of age, that the plain-
tiff was in it on the invitation of her son, that it was being driven down a
driveway to the street in front of her house on which the tracks of the defend-
ant ran, that the top of the buggy was up and that there were obstructions
which cut off her view of the street in the direction from which the car came.
A third occupant of the buggy testified that at a suitable place the plaintiff
looked in the direction from which the car came.    There also was evidence
tending to show that there was a noisy brook in the immediate neighborhood,
that the car was behindhand, running fast, and that no warning signal was
given as it approached.    At the time of the trial the plaintiff was insane and
unable to testify.    *Held,* that there was evidence warranting a finding that the
plaintiff was in the exercise of due care.

At the trial of an action by a woman for personal injuries alleged to have been
received from being thrown from a buggy because of a collision with an electric
street car, there was evidence tending to show that the buggy was being driven.
by the plaintiff's son, whose negligence contributed to cause the accident, that
the son was twenty years old and owned the horse and buggy, that the plain--
tiff was with him at his invitation on a journey from her home to see a friend
of his, and that she did not exert any control over the manner in which her
son drove.    It also appeared that, after the journey had begun, upon the plain-
tiff's discovering that she had left her glasses behind, the son drove back to
get them for her.    There was further evidence tending to show, and the jury in
answer to a special question found, that the plaintiff did not rely solely on the
care and diligence of her son in driving.    The presiding judge refused to rule
that the negligence of the son should be imputed to the plaintiff, and the de-
fendant excepted.    *Held,* that the exception must be overruled, since the mere
existence of the relation of parent and child did not cause the negligence of the
son to be imputed to the plaintiff as a matter of law, and that the jury had a
right to find that no relation of principal and agent or of master and servant
existed between the plaintiff and her son, but that she was merely his invited
guest, not depending exclusively upon his care as a driver.

Evidence that the motorman of an electric car, in approaching a driveway leading
from a dwelling house directly upon the electric car tracks in the highway at a
time which was not the car's regular time, ran the car at an excessive rate of
speed and without any warning signals, that when more than one hundred feet

from the driveway he saw a carriage coming out on it, that he could have stopped his car within that distance, but, instead of doing so, although applying his brakes at first, he then put on the power and tried to get past the end of the driveway before the carriage reached the car tracks, and that the car ran into the carriage, will warrant a finding that the collision was caused by the motorman's negligence.

TWO ACTIONS OF TORT, the first for personal injuries alleged to have been received by the plaintiff by her being thrown from a carriage because of its being run into by an electric car of the defendant negligently operated. The second action was by the husband of the plaintiff in the first and sought recovery for loss of the wife's society and services and for the expenses of medical attendance. (The plaintiff in the first action hereinafter will be called the plaintiff.) Writs in the Superior Court for the county of Essex dated November 15, 1902.

There was a trial before *Bell*, J. Just before the accident, the plaintiff was being driven in a Goddard buggy with the top up down a driveway to the street in front of her house upon which and near the side of the street where the plaintiff's house stood, the tracks of the defendant ran. Besides herself, there were in the buggy her son, who was driving, and a farmhand, one Badger. Badger and she occupied the seat and her son sat upon Badger's lap. Other facts are stated in the opinion.

At the close of the evidence, the defendant requested the presiding judge to rule that the negligence of the plaintiff's son was imputable to the plaintiff, and that there was not sufficient evidence of due care on the part of the plaintiff or of negligence on the part of the defendant to warrant a submission of the case to the jury. The requests were refused.

The following special question was submitted to the jury : " Did the plaintiff, in approaching the track, rely solely on the care and diligence of her son? " The jury answered " No."

There were verdicts for both plaintiffs and the defendant alleged exceptions.

*R. H. Sherman,* ( *W. J. McDonald* with him,) for the plaintiffs.

*J. P. Sweeney,* for the defendant.

SHELDON, J. We cannot say that there was not some evidence for the jury to consider on the question of the due care of the female plaintiff. She was being driven by her son, a young man of about twenty years, in his buggy drawn by his

horse.  As in *Chadbourne* v. *Springfield Street Railway*, 199 Mass. 574, she seems to have conducted herself as his invited guest, and due care on her part may have required that she should not attempt to do otherwise, or in any way to control or interfere with his mode of driving and management of the team.  She had no reason to anticipate negligence on his part. And there was evidence that at a suitable place she leaned forward and looked in the direction from which a car would come. She was insane at the time of the trial, and did not testify.  But from all the circumstances the jury might have inferred that she looked for an approaching car and saw none.  They might say that her failure to see or hear the car did not show negligence on her part, because of the obstructions to the view from the driveway and of the noise of the brook which ran across the street, and because, as might be found, no bell was rung or other signal given from the car itself.  See *Beale* v. *Old Colony Street Railway*, 196 Mass. 119; *Fitzhugh* v. *Boston & Maine Railroad*, 195 Mass. 202; *Evenson* v. *Lexington & Boston Street Railway*, 187 Mass. 77.  It was not the regular time for a car to pass; and this fact was not without some significance, although cars were occasionally late.  In view of all these circumstances, although the question is close and the evidence was undoubtedly meagre, the jury had a right to find that she was herself in the exercise of proper care.

There was undoubtedly evidence that her son who was driving the buggy was guilty of negligence which contributed to the accident, and the defendant's counsel contend that this negligence should be imputed to her, both because they were engaged in a common enterprise, and because of the relation of parent and minor child which existed between them.  But we are of opinion that the jury had a right to say that she stood in the position of a mere guest of her son, that she exercised no control over his actions in driving the carriage, and that she ought not to be held responsible for his negligence.

There was evidence that she went at his invitation to visit a friend of his in Haverhill.  The fact that after the start from her house she found that she had left her glasses behind and that her son drove back to get them for her, did not necessarily make him her agent or servant; he may have done it simply

as a kindly act and not in obedience to an order from her.    The
jury could find that her position was and continued to be that
of an invited guest.    Of course in that event they were not in
any sense engaged in a common enterprise.

Nor is the mere relation of parent and child decisive upon
this question.*    Undoubtedly, if a father is driving his young
child, or if a child is driving his parent while under the general
control or the special supervision of the latter, the negligence
of the one who was driving would be imputed to the other.
And undoubtedly the relationship of parent and child would
make it easier to infer the existence of supervision and control
than if the question arose between mere strangers; and this
is especially so if the child is a minor.    But ordinarily and in
the absence of special circumstances the question is one of fact,
and the test is whether the relation of principal and agent or
master and servant existed at the time, where there has not
been, as the jury have found that there was not here, an exclu-
sive dependence upon the care of the driver, that is, " a volun-
tary, unconstrained, non-contractual surrender of all care" to
the caution of the driver.    *Shultz* v. *Old Colony Street Rail-
way*, 193 Mass. 309, 323.    This has been the rule applied in
principle in our own later cases.    *Feneff* v. *Boston & Maine
Railroad*, 196 Mass. 575.    *Miller* v. *Boston & Northern Street
Railway*, 197 Mass. 535.    *Chadbourne* v. *Springfield Street Rail-

---

* On cross-examination the son testified as follows: "The homestead
farm that my mother owned embraces fifteen acres on one side of the street
and some on the other side, and adjoining this farm was nine acres of culti-
vated land that belonged to me.    I cultivated it jointly with my mother and
the products from my land went in with that from the rest of the farm.
The horse and buggy belonged to me and it was used by all of the members
of the family.    Badger [the farm hand] hitched it up and drove it some and
it was opened to my mother's use if she wanted it; Badger hitched it up and
drove her in it and sometimes I drove her and sometimes she drove it.    The
horse and buggy were for the use of all the family and any of the family
could use it, father, mother or hired man.    The horse was used to work both
pieces of land, the land which belonged to me and that which belonged to
my mother."    It also appeared that the husband was and had been for
many years mentally feeble as the result of a sun stroke, and the active
management of the farm devolved upon the plaintiff with the assistance of
her son.    She kept the books of account and worked in the fields and exer-
cised a general supervision and control of affairs.

*way,* 199 Mass. 574. It is the rule which has been approved in other jurisdictions. *Weldon* v. *Third Avenue Railroad,* 3 App. Div. (N. Y.) 370. *Boone County Commissioners* v. *Mutchler,* 137 Ind. 140, 149. *Buckler* v. *Newman,* 116 Ill. App. 546.

There was evidence to justify a finding that the collision was due to the negligence of the defendant's motorman in running his car to and over the plaintiff's driveway at an excessive rate of speed, without any warning signals, at a time when in the regular course of things it was not to be expected. He himself testified that he saw the plaintiff's carriage when his car was at a point which by measurement was more than a hundred feet from the place of the accident, that he could stop his car in a distance of from ninety to a hundred feet; that although he applied his brakes at first, he then let them off and put on his power and tried to get by the end of the driveway before the horse should reach the car tracks. He gave other testimony, and there was other evidence in the case which would amply have justified a finding for the defendant; but the whole question was for the jury.

Accordingly, in each case judgment must be entered on the verdict; and it is

*So ordered.*