MARY K. YOUNG, Administratrix, Defendant in Error, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, November 22, 1897.

1. **Negligence:** RAILROAD CROSSING: DEMURRER TO THE EVIDENCE: NEGATIVE TESTIMONY. The evidence in this case is reviewed and held sufficient to submit to the jury the question of whether the crossing signals were given or not, and this, too, notwithstanding its negative nature as against positive evidence of trainmen.

2. ———: ———: CONTRIBUTORY NEGLIGENCE: APPELLATE PRACTICE.
Before a plaintiff can be declared as a matter of law to be guilty of
contributory negligence it must be established by clear and uncontra-
dicted proof that he was not in the exercise of ordinary care and such
want of care contributed to the injury; and where there is evidence
to support the respective theories of the parties and these theories
are fairly submitted to the jury by instructions, the appellate court
has no right to interfere.

*Error to the Pettis Circuit Court.*—HON. G. F. LONGAN,
Judge.

AFFIRMED.

*Geo. P. B. Jackson* for plaintiff in error.

(1) The evidence did not establish negligence on
the part of the defendant.    It was not sufficient to sub-
mit that issue to the jury, and did not justify a finding
by the jury, and the finding against the defendant
upon this evidence was contrary to the instructions as
given by the court.    *First.* The law presumes that the
trainmen gave the signals required by the statute.
*Jenett v. R. R.*, 50 Mo. App. 547; *Agan v. Shannon*,
103 Mo. 661; *State ex rel. v. Bank*, 120 Mo. 161.   *Sec-
ond.*  The negative evidence presented by the plaintiff
was not sufficient to overcome that presumption, and
the positive evidence offered by the defendant support-
ing it.   *Henz v. R. R.*, 71 Mo. 636, 638; *Isaacs v.
Skrainka*, 95 Mo. 517, 523.    *Third.*   For these rea-
sons the court erred in refusing the peremptory in-
struction to find for the defendant.    (2) Since the
evidence showed that Young was familiar with the
crossing, and since the only conclusion to be drawn
from the testimony of the plaintiff's witness Quint
and the trainmen was that the deceased discovered
the train and whipped his horses and attempted
to pass ahead of the train, the court was inconsist-
ent in giving the plaintiff's first and the defend-

ant's fifth instruction. The evidence in the case and the defendant's fifth instruction eliminated entirely any question of negligence arising from a failure to give the signals, and it was only calculated to confuse the jury to tell them on the one hand that they might find for the plaintiff if the signals were not given and on the other hand that it was immaterial whether they were given or not. *Frank v. R. R.*, 57 Mo. App. 181–186; *Nichols v. Jones*, 32 Mo. App. 657–666; *Martinwosky v. Hannibal*, 35 Mo. App. 70–76; *Stone v. Hunt*, 94 Mo. 475–481; *Bluedom v. R. R.*, 108 Mo. 439–450. (3) But even if it were conceded that the trainmen failed to give the signals for the approach of the crossing, yet the contributory negligence of Mr. Young would preclude a recovery in this case. *Hayden v. R. R.*, 124 Mo. 566; *Loring v. R. R.*, 128 Mo. 349; *Kelsay v. R. R.*, 129 Mo. 362; *Lane v. R. R.*, 132 Mo. 4; *Yancey v. R. R.*, 93 Mo. 433; *Boyd v. R. R.*, 105 Mo. 371; *Huggart v. R. R.*, 134 Mo. 673; *Jones v. Barnard*, 63 Mo. App. 501.

*John Cashman* and *Sangree & Lamm* for defendant in error.

(1) There was ample evidence tending to prove that the statutory signals were not given. *McCormick v. R. R.*, 50 Mo. App. 109, 112, 113; *Cathcart v. R. R.*, 19 Mo. App. 113; *Summerville v. R. R.*, 29 Mo. 48. And the cases cited by plaintiff in error. (2) The burden being upon defendant corporation to sustain its defense of contributory negligence, the rule is, that "in order to justify the court in taking the case from the jury as a matter of law, it should clearly and incontrovertibly appear that no other conclusion than that of plaintiff's negligence is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it." *Kenney v. R. R.*, 105

Mo. 270; *Huhn v R. R.*, 92 Mo. 440; *Mauerman v. Siemerts*, 71 Mo. 101; *McNown v. R. R.*, 55 Mo. App. 585; *R. R. v. Ives*, 144 U. S. 408; *R. R. v. Griffith*, 159 U. S. 603; *Donohue v. R. R.*, 91 Mo. 357. (3) While it may be true that the law presumes that trainmen give the signals required by statute, in the absence of evidence to the contract. *Jewett v. R. R.*, 50 Mo. App. 547. Yet there is also another presumption which must be reckoned with, and that is, the law also presumes that Rudolph Young was at the time in the exercise of due care and diligence. *Crumley v. R. R.*, 111 Mo. 152, and many cases cited; *Buesching v. Gas Co.*, 73 Mo. 219; *Petty v. R. R.*, 88 Mo. 306; *R'y v. Barker*, 77 Fed. Rep. 810; *O' Conner v. R. R.*, 94 Mo. 150 (157); *R'y v. Spradling*, 72 Fed. Rep. 152; *Eswin v. R. R.*, 96 Mo. 290.

GILL, J.—This is an action for damages brought by the plaintiff as administratrix of Rudolph Young, deceased, to recover the value of a team of horses, wagon and harness destroyed in a collision at a road crossing in Cooper county. The negligence of defendant relied upon was the failure of defendant's servants operating the train to give the statutory signals—ringing the bell or sounding the whistle—eighty rods before getting to the crossing. The answer denied the alleged negligence, and in addition pleaded contributory negligence on the part of said Rudolph Young. From a verdict and judgment below in plaintiff's favor, defendant appealed.

For reversal it is contended that there was no substantial evidence to prove any negligence on the part of defendant's employees, or that at all events the said STATEMENT. Young, who was at the time driving the team, was himself guilty of negligence, and therefore the court erred in allowing the

case to go to the jury.   This necessitates a brief state-
ment of such facts as plaintiff's evidence tended to
prove.

The following diagram, taking from briefs of
counsel, will aid materially in understanding the situa-
tion:

C, S, D, E is the public road, the portion D, S,
C running east and west.   B, S, A is the railroad run-
ning northeast and southwest.   S is the Schlotzhauer
crossing.   W is the whistling post.   G is where the
witness, Bradford, saw the train as it passed.   F is
where the eyewitness, Quint, was in the public road.
The train was running from B toward A, northeast.
Rudolph Young was approaching S from C, going
west.   The witness, Quint, was approaching S from D,
going east.   North of the public road was timber.
The field, bounded by the lines B, S, D, E, had been
in oats and was so level that the train was in plain view
to anyone located at G or F until it entered a cut at
about H.   The field south of that part of the public road
S, C, and east of the railroad was in standing corn, ex-
cept an orchard about I.   There were also draws and

rises in this field, and weeds along the road and rail-road fences, intercepting a view of the railroad to any-one approaching from C.

The railroad runs through the edge of the nose of one of these rises, from H to a point beyond S, cross-ing the highway at S in a cut. Approaching this cross-ing from C the public road slopes downward and was also cut down until it crossed the railroad at S, on or about a level with the track, and this cut ended at about S or a little west. Right at S, going west, the public road dips up a little. A train going from B toward A runs on a down grade. At W there is a slight fill in the railroad, and further toward B there is an-other cut, and a short distance further, southwest, the Nixon crossing.

At the time of this collision, it is agreed on all hands that it was a cold, dry, blustery day, with dust and litter in the air. Shortly after noon, November 17, 1893, said Rudolph Young, while driving his wagon and team west on the county road, was run into by a freight train running on the down grade from B to A; he was killed and the horses, wagon and harness de-stroyed.

As to the alleged negligence of defendant's train-men, there appears ample evidence tending to prove that they failed to give the statutory sig-nals as this crossing was approached. The witnesses Bradford and Quint occu-pied favorable positions for observation in this respect. Bradford was standing in the front doorway of his residence at the point G marked on the diagram, and W, the whistling post, was immediately in his front and near by. From his testimony it would seem that he was giving attention to the passing train, and that if the whistle had been sounded or the bell rung he would have heard it. He

NEGLIGENCE: railroad cross-ing; demurrer to the evidence: negative testi-mony.

testified that no such sounds were made until the train reached the crossing, when for the first time he heard an alarm whistle, and at once the crash attending the collision. Quint's testimony was still more convincing —if worthy of belief, and of this the jury was the judge. He was going east and in the opposite direction to Young. At the point F, on e hundred to one hundred and fifty feet from the crossing, he saw across the open field to his right the train approaching from the southwest. He stopped his team and at the same time saw Young coming from the east; saw Young also stop his wagon, rise up, look and listen, and then drive on. Quint became uneasy for Young's safety because he observed that the train was making no warning sound—that no bell was being rung nor whistle sounded. There was some other testimony of the same tendency, though not so direct as these two witnesses. These were sufficient, however, to warrant the court in submitting the question of defendant's negligence to the jury. It will not do to say, because the testimony of these eyewitnesses was of a so-called negative character, that no weight should be attached thereto when confronted by that of a positive nature given by the engineer and fireman who were on the train. We have lately had such objections as this before us and what is there said is applicable to the facts of this case. *State ex rel. v. R'y*, 70 Mo. App. 634; *McCormick v. R'y*, 50 Mo. App. 109.

Neither do I think that the evidence incontrovertibly makes out a case of contributory negligence. As has often been said, the charge that the plaintiff was injured through his own negligence is a matter which the defendant wrongdoer must prove by a preponderance of evidence— the burden of so showing rests on the defendant. And before the court can per-

—: ——: contributory negligence: appellate practice.

emptorily declare such defense made out as matter of law, it must be established by clear and uncontroverted proof; it must be shown without substantial contradiction that the plaintiff, or party injured, did not at the time exercise the care of an ordinarily prudent person, and that such want of care on his part contributed to the injury, otherwise the question must be left to the decision of the jury.

There was evidence tending to prove that as Mr. Young approached the crossing he was unable to and did not see the coming train until he got almost immediately on the track. This was because of the cut in the county road as it came from the east down to the grade of the railroad, leaving an embankment on the south side, together with the presence of the cornfield, weeds, fences and other obstructions which extended down to the railroad tracks. Surrounded by these conditions the deceased did not drive heedlessly forward, but according to plaintiff's evidence, stopped his wagon some fifty yards before getting to the crossing, and at the most favorable point raised up and looked and listened before venturing to cross. Hearing nothing, he started his team forward at a slow trot and came upon the track just in time to be caught by the passing train.

Defendant's theory is that the deceased saw the train and recklessly attempted to pass in its front, and because of misjudgment was unable to get over before the train arrived. If this were so, then there could be no recovery, for such conduct would be so clearly negligent as to justify the charge that the deceased brought on the damage by his own fault and carelessness.

But these respective theories were, as they should have been, submitted to the jury, and we have no right to interfere with its finding. The question is, did the deceased, under the circumstances then existing,

conduct himself as would be expected of an ordinarily prudent person? If the evidence in plaintiff's behalf tended to prove that he did so, then the court was right in refusing to nonsuit the plaintiff. *McNown v. R'y*, 55 Mo. App. 585, and authorities cited on page 592. "When the view of the railroad is obstructed so as to render it difficult or impossible to see an approaching train, the question whether the traveler was wanting in due care is one for the jury to determine." BLACK, J., in *Baker v. R'y*, 122 Mo. 533.

The instructions of the court have been examined and are found entirely fair to the defendant. Judgment affirmed. All concur.