## Z. T. McNown, Appellant, v. Wabash Railroad Company, Respondent.

### Kansas City Court of Appeals, January 8, 1894.

1. **Railroads: SIGNALS AT CROSSING: NEGLIGENCE.** A railroad company, when it fails to ring the bell or sound the whistle as the train approaches a highway crossing, violates the statute and is guilty of negligence.

2. ————: ————: **CONTRIBUTORY NEGLIGENCE.** In order to justify the court in taking a case from the jury and declare plaintiff negligent, as a matter of law, it should clearly and incontrovertibly appear that no other conclusion than that of plaintiff's negligence is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it; and the evidence in that case does not justify the court in declaring plaintiff guilty of contributory negligence, ELLISON, J., *dissenting*.

3. ————: ————: **ORDINARY CARE.** A person on the highway approaching a railroad crossing is only required to use ordinary care, which does not mean that every possible precaution shall be adopted, but only that care and circumspection which should be expected of one of ordinary prudence.

*Appeal from the Carroll Circuit Court.*—HON. E. J. BROADUS, Judge.

REVERSED AND REMANDED.

*Virgil Conkling* for appellant.

(1) The demurrer to the evidence should not have been sustained. The negligence of defendant was conclusively proven, and the question of plaintiff's contributory negligence was clearly a matter for the jury to determine. The testimony of plaintiff, taken as a whole, does not show contributory negligence. At the most, it was only a doubtful case upon which sensible men might differ. It was therefore a question of fact

for the jury, and to them should have been submitted. The court is authorized to pronounce certain conduct negligent only when no other construction may fairly and reasonably be placed upon it. *Petty v. Railroad,* 88 Mo. 306; *Keim v. Railroad,* 90 Mo. 314; *Wilkins v. Railroad,* 101 Mo. 93; *Dickson v. Railroad,* 104 Mo. 492; *Kenney v. Railroad,* 105 Mo. 271; *Bluedorn v. Railroad,* 19 S. W. Rep. (Mo.) 1106; *Dixon v. Railroad,* 19 S. W. Rep. (Mo.) 412; *Ramsey v. Railroad,* 20 S. W. Rep. 162; *Jennings v. Railroad,* 20 S. W. Rep. (Mo.) 490. (2) A person crossing a railroad has the right to assume that the statutory signals will be given, and to so act. *Petty v. Railroad, supra; Crumpley v. Railroad,* 19 S. W. Rep. (Mo.) 820; *Jennings v. Railroad, supra.*

*F. W. Lehmann* and *Geo. S. Grover* for respondent.

The plaintiff's own testimony clearly developed the fact that the accident was caused solely by his own negligence, in driving upon defendant's track without the looking or listening for approaching trains. In such a case it is the duty of the trial court to instruct the jury that, as a matter of law, the plaintiff cannot recover, even though the defendant was also negligent in failing to give the statutory signals. *Henze v. Railroad,* 71 Mo. 636; *Turner v. Railroad,* 74 Mo. 602; *Powell v. Railroad,* 76 Mo. 80; *Taylor v. Railroad,* 86 Mo. 457; *Yancey v. Railroad,* 93 Mo. 433; *Hudson v. Railroad,* 101 Mo. 13; *Boyd v. Railroad,* 105 Mo. 371; *Corcoran v. Railroad,* 105 Mo. 399; *Maxey v. Railroad,* —— Mo. ——; 20 S. W. Rep. (1893), p. 654; *Drake v. Railroad,* 51 Mo. App. 562; Mo. Legal News, Feb. 15, 1893, p. 257.

GILL, J.—The plaintiff sued the defendant for damages for negligently running one of its trains over

and killing his mare at a public road crossing at Norborne, Missouri. The negligence alleged was that defendant's servants in operating the train failed to ring the bill or sound the whistle as the crossing was approached, as is required by the statute, Revised Statutes, 1889, section 2608. The defense consisted of a general denial and a plea of contributory negligence. At the close of plaintiff's evidence the court, at the instance of the defendant, gave an instruction that the plaintiff could not recover. The plaintiff thereupon submitted to an involuntary nonsuit and brought the case here by appeal.

The court's action in admitting certain evidence as to contributory negligence not pleaded and thereafter allowing defendant to amend its answer so as to cover the objectionable evidence, we deem it unimportant to notice, since at all events we think the court erred in taking the case from the jury.

As already stated, the defense was two fold—a denial of negligence, coupled with a plea of contributory negligence, in that plaintiff carelessly and negligently drove his team onto the defendant's track without looking and listening for an approaching train. There was abundant testimony tending to prove the alleged negligence in running the train, in that the bell was not rung nor whistle sounded as the train approached the crossing. But the trial court seems to have sustained the demurrer to the evidence on the alleged ground that plaintiff was himself guilty of negligently driving onto the track of the railroad without looking and listening for passing trains.

The testimony is not at all clear in some respects, but from the abstract we understand the circumstances to have been about as follows: At Norborne the course of defendant's road is east and west, crossing this public road running north and south at right angles.

On the north side of the Wabash right of way stands a mill and some other small buildings one of which seems to extend well out towards the tracks of the railroad. Now, the plaintiff's movements are thus told in his own language: "I am the plaintiff, live in Ray county and am engaged in farming. At about eleven o'clock A. M. January 27, 1891, I drove my team up to Stribling's Mill in the town of Norborne, drove the team to the north door and held them there headed west. While standing there a train went east over the Santa Fe. Immediately thereafter I got unloaded and started to drive over to the store. When I started to drive out I was informed that I had plenty of time to cross the Wabash track; that the next train would be a passenger and that it wasn't due for some little time yet. (The train that did the damage was an extra freight.) When I started from the mill door with my team, I drove west to the corner of the mill and then turned around the corner of the mill and went south to the southeast corner; I then turned the southeast corner of the mill and drove east, or a little north of east, turned around the electric light pole and then around the telegraph, making an easterly course like the letter 'S' and' then turned south and drove on the Wabash track at the regular mill crossing. This road is a public road and the crossing is a public crossing and both are used by the public generally. The street crossing the Wabash track at this point is known as Elm street and runs north and south. At the time I started to drive across the track I had no indication whatever of a train approaching and heard no signals whatever. When a person is coming around the mill there is a grain house, and when a person is in a position to see up the track it obstructs the view. When I looked up the track there was nothing in sight at all. I looked up the track to see, and couldn't see

anything. When I drove onto the Wabash track I suddenly discovered the train approaching and do not think it was more than two hundred and fifty feet away. I had just driven onto the dump and the horses had gotten their fore feet on the track, when I saw the train coming. I tried to save myself by jerking my team out of the way. I turned the team partially to one side, but the engine struck one of the team, a valuable brood mare which was worth $125 or more."

On cross-examination plaintiff was asked this question:

"'Q. When you turned south—we will assume that you were within twenty or twenty-five feet of the railroad—did you look up the track to see if the train was approaching? A. Don't suppose that I did.

"Q. When you started south with your team across the track did you look up that railroad track? A. No, sir; I don't suppose I did; I heard nothing to attract my attention.

"Q. Wasn't the road perfectly straight here for two miles? A. Yes, sir."

The witness further testified: "Had some conversation with Mr. Hess before I left the mill door. I asked him how soon there would be another train, and he said the next would be a passenger on the Wabash, but that it wasn't due for some little time yet and I would have plenty of time to get out. There is a grain house west of this mill, that extends out towards the Wabash railroad. I looked up the track as far as the building would permit me seeing and there was nothing in sight and I heard nothing. When I got to the southwest corner of the mill I could see only a short distance up the track, and when I got to that point I did not hear any noise like the ringing of a bell or the blowing of a whistle."

Keller, another witness, among other things, stated: "It is about eighty feet from the mill to the railroad track. I didn't notice McNown until the train was right on him.

"*Q.* After McNown emerged from the mill, was there anything to prevent him from seeing up the track? *A.* I think there was some small building in the way on the north side of the track."

On this state of the evidence the trial court forced plaintiff to a nonsuit on the ground that his loss was the direct result of his own negligence, and, therefore, that he was in no condition to complain of the defendant's negligence. The announcement of the principles of law controlling this character of cases is often easier than their application to a given state of facts. The omission to do a thing in the time or manner as commanded by positive statute is negligence *per se.* Hence the defendant, when it failed to ring the bell or sound the whistle as the train approached the crossing in question, violated the statute and was guilty of negligence. On the other hand, if when the plaintiff approached the railroad crossing he failed to exercise that degree of care which an ordinarily prudent person would observe under the same or similar circumstances, then plaintiff will be deemed to have been likewise negligent, and for damages occasioned thereby he cannot recover.

Admitting now that defendant's train men were in the flagrant violation of the statute (which the testimony tends to prove); that they were running the train across this public highway without giving the statutory signals, then the plaintiff ought to recover for the killing of his mare, unless he, too, was negligent. This contributory negligence charged on the plaintiff is matter of defense that must be made out by the defendant, the *onus* rests on it. Such negligence, too, is ordinarily for the determination of the jury under

proper instructions. The court is not authorized to interfere and declare such defense established, except on the clearest proof. *Bluedorn v. Railroad*, 108 Mo. 439.

"When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been determined by the jury. The inference to be drawn from the evidence must either be certain and incontrovertible or they cannot be decided upon by the court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ." *Voelker v. Railroad*, 129 Ill. 552. In order to justify the court in taking the case from the jury and declare the plaintiff negligent, as matter of law, it should clearly and incontrovertibly appear that no other conclusion than that of the plaintiff's negligence is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it. *Kenney v. Railroad*, 105 Mo. 270, and cases cited.

Now, while the evidence here may tend to prove the plaintiff wanting in that degree of care which he ought to have exercised in approaching the crossing, we yet fail to see in his conduct that clear case of contributory negligence which would justify the court in so declaring as matter of law.

This is not a case where the plaintiff failed altogether to observe the precaution of looking and listening as he was approaching the point of danger. He seems to have been on the alert, but owing to the location of the grain house or other small structures extending out towards the railroad was unable to see any great distance up the track until he got within twenty or twenty-five feet thereof. And within this

space, and just as his horses had set their forefeet on the first rail, he looked west and discovered the approaching train at a distance of about two hundred and fifty feet. He says that he then made every effort to free himself and his team from the threatened peril by jerking them back; he turned the team partially to one side, but was unable to get one of the horses entirely out of the way of the moving train. It does not appear just how far the plaintiff's person had passed the obstruction on the north side of the track when he looked west and saw the coming train. It was apparently a very short distance, since it was only about twenty or twenty-five feet from this obstruction to the north side of the railroad track, and within this space stood the wagon and horses. It may be that if he had cast his eye westward when a few feet further north he would have been able to discover the engine in time to have averted the accident. But that he did not do so is not conclusive proof that he was negligent. Ordinary care does not mean that every possible precaution shall be adopted, and ordinary care was all that plaintiff was called on to exercise. The question is, did the plaintiff, under the circumstances, conduct himself with that care and circumspection which should be expected of one of ordinary prudence. If he did this, then it was all that was required in order to relieve himself of the imputation of contributory negligence. *Kenney v. Railroad*, 105 Mo. 288; *Jennings v. Railroad*, 112 Mo. 275; *Easley v. Railroad*, 113 Mo. 245; *Shaw v. Jewett, Rec'r*, 86 N. Y. 617; *Greany v. Railroad*, 101 N. Y. 424; *Plummer v. Railroad*, 73 Mo. 594; Bishop on Non-contract Law, sec. 143.

The circumstances, too, are to be considered along with the plaintiff's conduct in order to determine whether he was conducting himself as an ordinarily prudent person would. He left the mill on the north

side of the railroad after being advised that there was no train yet due, that it would be some little time before a train would pass on the Wabash; and it seems that the train doing the damage was an extra freight passing unexpectedly. Besides, the plaintiff heard no train bells or whistle, and had a right then to assume that no train was coming. *Petty v. Railroad*, 88 Mo. 319. Taking these circumstances in connection with all the evidence in the case we think the question of contributory negligence was one for the jury and should have been submitted to it for determination.

The judgment, therefore, will be reversed and the cause remanded. SMITH, P. J., concurring; ELLISON, J., dissents.