T. N. DAY, Respondent, v. MISSOURI, KANSAS &
TEXAS RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, October 5, 1908.**

1. **RAILROADS: Crossing: Collision: Signals: Evidence.** The
failure to give the statutory signals at a public crossing is
prima-facie evidence that the following collision on the crossing
was caused by the failure; such presumption, however, may
be overcome by evidence that the failure did not produce
the collision; and the evidence is held to show a case for the
jury.

2. ———: ———: **Improper Construction: Evidence: Phys-
ical Facts.** The circumstances attending a collision at an
improperly constructed crossing are held not to contradict the
physical facts of the situation and sufficient to send the ques-
tion of negligence to the jury.

3. ———: ———: **Contributory Negligence: Evidence.** The
circumstances attending a collision at a crossing are held in-
sufficient to take the case from the jury on the ground ·of
contributory negligence.

Appeal from Vernon Circuit Court.—*Hon.* ·B. G.
*Thurman,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) Neither the failure to give the crossing signals,
nor the failure to place and maintain gravel or macadam
on the road crossing, was the proximate cause of the
injuries complained of, and these being the only grounds
of negligence relied on in this case, no liability was
established. To render the defendant liable there must
appear to have been such connection between the failure
of defendant and the injury of plaintiff as to make the
former the proximate cause of the latter. Alexander
v. Railroad, 76 Mo. 494; Braxton v. Railroad, 77 Mo.
455; Kimes v. Railroad, 85 Mo. 611; Crumpley v. Rail-

road, 111 Mo. 152; Atterbury v. Railroad, 110 Mo. App. 615. (2) There being evidence from both plaintiff's and defendant's witnesses tending to show that the failure to give the signals was not the cause of the injury—the rule of prima-facie case ceased to apply, and the burden was then on plaintiff to prove that the failure to ring the bell or to sound the whistle was the cause, just as the burden was all the time on him to prove that the failure to cover the crossing with gravel or macadam was the cause. Moberly v. Railroad, 98 Mo. 187; Myers v. Kansas City, 108 Mo. 487; Rapp v. Railroad, 106 Mo. 428; Lynch v. Railroad, 112 Mo. 433; Schipers v. Railroad, 126 Mo. 670; Morton v. Heiorn, 135 Mo. 617; Haycraft v. Grigsby, 88 Mo. App. 362. (3) It is impossible to ascertain from the verdict whether the ten members of the jury based their verdict on one ground of alleged negligence or the other, or whether part of them relied on one and the others on the other ground. Under such circumstances the verdict should not be allowed to stand. Crumpley v. Railroad, 98 Mo. 34. (4) Even if it were established that defendant was guilty of negligence as predicated in the plaintiff's instruction, and that such negligence could be considered the proximate cause of plaintiff's injury, yet he is not entitled to recover, because his own negligence contributed to his injury. The uncontradicted and indisputable evidence established that the exercise of reasonable and ordinary care by plaintiff would have prevented the injury, and he failed to exercise such care, when he might have done so, and therefore is not entitled to recover. Stepp v. Railroad, 85 Mo. 229; Hayden v. Railroad, 124 Mo. 572; Kelsay v. Railroad, 129 Mo. 372; Lane v. Railroad, 132 Mo. 27; Hook v. Railroad, 162 Mo. 580; 3 Elliott on Railroads, sec. 1165; Schmidt v. Railroad, 191 Mo. 228; Sanguinette v. Railroad, 196 Mo. 466; Stotler v. Railroad, 204 Mo. 619.

*Scott & Bowker* for respondents.

(1)   It is actionable negligence for a railroad company to fail to construct its crossings as required by statute.  R. S. 1899, sec. 1103; Moberly v. Railroad, 17 Mo. App. 518; Camp v. Railroad, 94 Mo. App. 272; Kimes v. Railroad, 85 Mo. 611; Nixon v. Railroad, 141 Mo. 425.   (2)   Railroad companies are liable for negligence in failing to ring the bell or sound the whistle as it approaches a public crossing, and the burden is on the railroad company to show that such failure was not the cause of the accident.  Huckshold v. Railroad, 90 Mo. 548; McNulty v. Railroad, 203 Mo. 475; Atterberry v. Railroad, 110 Mo. App. 608.   (3)   A party who approaches a public crossing has a right to assume that the statutory signals will be given.  Mitchell v. Railroad, 122 Mo. App. 50; Elliot v. Railroad, 105 Mo. App. 523; Russel v. Railroad, 70 Mo. App. 88; Crumpley v. Railroad, 111 Mo. 152.   (4)   The question of contributory negligence in this case, if there is any testimony thereof whatever, was one for the jury.  Mitchell v. Railroad, 122 Mo. App. 50; Murphy v. Railroad, 189 Mo. 42; Donohue v. Railroad, 91 Mo. 357; Baker v. Railroad, 122 Mo. 533; Hanlon v. Railroad, 104 Mo. 381; Kelley v. Railroad, 7 N. W. 291; Pixter v. Storm, 73 N. Y. 601.   (5)   One placed in great danger by the negligence of another, is not required to nicely gauge the circumstances surrounding him, and will not be held guilty of contributory negligence if he does not pursue the wisest course in such a position.  Root v. Railroad, 195 Mo. 348; Lange v. Railroad, 115 Mo. App. 489; Bischoff v. Railroad, 121 Mo. 215.   (6)   The question of negligence of the appellant being the proximate cause of the injury, was one for the jury.  Mitchell v. Railroad, 122 Mo. App. 50; Murphy v. Railroad, 189 Mo. 42; Baker v. Railroad, 122 Mo. 533; McNulty v. Railroad, 203 Mo. 475; Donohue v. Railroad, 91 Mo. 357; Lange

v. Railroad, 115 Mo. App. 489; Moberly v. Railroad, 17 Mo. App. 518; Liming v. Railroad, 47 N. W. Rep. 66.

JOHNSON, J.—This suit is for damages resulting from personal injuries received by plaintiff at a crossing of defendant's railroad and a public highway in Vernon county. Negligence of defendant is pleaded as the direct cause of the injury. The answer is a general denial and a plea of contributory negligence. The trial resulting in a judgment for plaintiff in the sum of $1,975, the cause is here on the appeal of defendant. The principal contention of defendant is that its demurrer to the evidence should have been sustained for the reasons that the evidence does not accuse it of negligence causing the injury and does show that the injury was the direct result of plaintiff's own negligence.

The crossing where plaintiff's mishap occurred is about three-fourths of a mile west of the town of Clayton in Vernon county and perhaps six miles east of Fort Scott, Kansas. Plaintiff, a farmer living near Clayton, drove to Fort Scott in a low-wheeled farm wagon on August 7, 1906, obtained a load of sacked bran, and started to return home in the evening. The wagon road he traveled runs east and west and, from Fort Scott east to the crossing in controversy, is a short distance south of defendant's railroad which runs between Fort Scott and Clayton. Going eastward the railroad, at a point about 250 feet west of the crossing curves to the southeast and runs in that direction on a tangent over the crossing. The public roadway keeps to a straight east and west course where it crosses the railroad, but at the time of the injury the road therein traveled by vehicles—the beaten path—was decidedly sinuous at the crossing and its approaches. Railroad and wagon road were practically on the same level, the former being a little higher than the latter. The crossing was constructed in the manner required by statute

except in the particulars presently to be noted. A small ditch to the west of the railroad track and along the foot of the roadbed was filled at the crossing by a small wooden culvert twenty feet long. The northwest end of this culvert was about six feet from the railroad track and was so placed that in going eastward along the traveled road, drivers of vehicles, to avoid having the wheels on the north side run off that end of the culvert into a mud hole, were compelled to make a slight turn to the southeast. After making this turn, the road then turned to the northeast and continued in that direction over the crossing to a point near the fence on the north side. Then it changed abruptly to the southeast until it reached the middle of the roadway, where it changed to straight east. The last turn described was made necessary by the presence of an embankment of earth about three feet high thrown up by defendant which began at a point in the public roadway about midway between its center and north lines and extended southeastwardly parallel to the railroad track.

Plaintiff approached the crossing at about ten o'clock at night. He stopped his team, looked and listened for an approaching train, and receiving no warning that one was coming, started forward to the crossing. It was dark and in making the first turn, he failed to go far enough to the southeast. The front wheels of his wagon passed over the culvert but the north hind wheel dropped into the mud hole. The off horse fell to his knees and the team stopped. The horse quickly regained his feet and plaintiff urged the team forward. They could not move the wagon and the off horse again fell to his knees. The team stood on the railroad track and, realizing that he and his property were in a place of danger, plaintiff hastily alighted and began unhitching. He had detached three of the tugs when the glare from a reflected headlight warned him that a train was coming from the west. Looking up, he saw

the engine at the curve and forsaking his property, turned and ran southward to get out of danger. He had not run over fifteen or twenty feet before the engine struck the tongue and front end of the wagon. He was struck and severely injured by a sack of bran hurled in his direction by the force of the collision. The engine did not signal for the crossing, and plaintiff did not know the train was coming until about the time the engine reached the curve. The train was "the flyer," a fast passenger train and was running at from forty-five to fifty miles per hour. There was no macadam or gravel between the rails at the crossing nor on the approaches and recent rains had made the public road muddy. On account of the darkness, plaintiff could not see that he was making the first turn in a manner to throw the hind wheel beyond the end of the culvert.

The facts stated are those most favorable to plaintiff and are all that need be considered in the discussion of the question of whether plaintiff was entitled to go to the jury on the issue that negligence of defendant was the proximate cause of his injury. The petition charges that defendant was negligent "in failing to construct and build a good and sufficient and proper railroad crossing and approach thereto and failing to build a culvert of sufficient length on said right of way, and in obstructing a portion of the public highway at such public crossing and in failing to give the statutory signals and warnings as required by law." The issues of negligence submitted to the jury are thus stated in plaintiff's first instruction:

"The Court instructs the jury that if you believe and find from the evidence that the place where plaintiff alleges that he received his injuries was a public road, and that the same was crossed by defendant's track and line of railroad, and that on the 7th day of August, 1906, the plaintiff, while attempting to use said

crossing with his team and wagon, that his wagon. was struck by one of defendant's trains, and that a sack of bran, contained in defendant's wagon was thrown against him by said collision, and that the plaintiff was injured thereby, and if you further find from the evidence that the defendant's agents, servants, and employees in charge of said train failed to ring any bell or sound any whistle eighty (80) rods from said crossing, and to ring said bell or sound said whistle at intervals, as it approached said crossing; and if you further believe and find from the evidence that defendant failed and neglected to place and maintain macadam or gravel between the rails of its said track as aforesaid at said crossing, and failed and neglected to make and maintain good and sufficient approaches to their said rails at said crossing, and to cover the same with gravel or macadam, to a depth of not less than six (6) inches; and if you further find from the evidence that the defendant knew of the condition of said crossing, or might have known by the exercise of reasonable care and caution in time to have repaired the same prior to plaintiff's alleged injury, if any; and if you further believe and find from the evidence that the sole cause of the injuries of the plaintiff, if you find he was injured, was the failure of the defendant to ring its bell or sound its whistle, at intervals, as aforesaid, as it approached said crossing, at least eighty (80) rods before it reached the same, and the failure of the defendant, if you so find, to place and maintain said gravel between its said rails at said crossing, and to construct and maintain proper approaches thereto, and to cover the same with gravel or macadam, as aforesaid; and if you further find from the evidence that the plaintiff himself was in the exercise of due care at the time he alleges he was injured, then your finding must be in favor of the plaintiff."

It is conceded, in effect, that the evidence adduced

by plaintiff supports the charges of negligence pleaded in the petition and submitted in the instruction quoted, but it is argued by defendant that none of these delinquencies was the direct cause of the injury. First, we shall consider the question of whether the failure to sound the whistle or ring the bell might reasonably be said from the facts and circumstances in evidence to have been a proximate cause of the injury. Section 1102, Revised Statutes 1899, requires the operators of locomotives to signal for road crossings in the country, either by ringing the bell for a distance of eighty rods from the crossing or by sounding the whistle at least eighty rods therefrom and provides that "said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section, provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury."

Neglect to give the required signal thus is made prima-facie evidence of the fact that such negligence was the direct cause of the injury in cases where the plaintiff is injured by a collision with an engine or train at a public road crossing. But this presumption may be overcome by evidence, and where it appears from all the evidence that such negligence was not a producing cause, the plaintiff should not be permitted to predicate a right to recover on the fact that the signal was not given. Where, however, the evidence introduced by the defendant tends to overthrow the presumption but is opposed by facts and circumstances adduced by the plaintiff to the effect that the failure to give the signal was a proximate cause, an issue of fact is presented that should be solved by the triers of fact.

Applying these rules to the evidence before us, we find that the question under consideration was one of

fact for the jury. It may be true that plaintiff's team and wagon became stalled at the crossing, before the locomotive reached the signal point and that it would have been impossible for plaintiff to extricate his property had the signal been given, but on the hypothesis that plaintiff while in the exercise of reasonable care had no warning of the coming of the train at the time he became entrapped in a place of danger, we can see plainly that the omission to give the signal played a very direct and prominent part in the production of the injury. Had the signal been given, it is but fair to plaintiff to give credit to his assertion that he would have abandoned his property at once, and sought a place of safety for himself. In doing this, he would have had ample opportunity to protect himself, but with no warning until the engine was not over four hundred feet away, he was caught in a trap and could not escape.

We pass now to the question of whether the very manifest negligence of defendant with respect to the construction and maintenance of the crossing may reasonably be considered as a proximate cause. Under the provisions of section 1103, Revised Statutes 1899, defendant was negligent in not properly covering the crossing and approaches with macadam or gravel to a depth of six inches. Considering the tortuous course vehicles were compelled to pursue over the crossing and approaches, the failure to provide a statutory roadway was likely to throw a driver out of the narrow and crooked path, especially in the dark. Except in complete darkness, a paved road is visible to some extent and a driver can tell both by his senses of sight and hearing, if his vehicle is keeping to the prepared roadway. It is quite different from traveling on a muddy dirt road where one even in partial darkness cannot always know whether or not he is keeping in the road. In the circumstances depicted in evidence,

we think the jury was entitled to find that plaintiff's. wagon wheel reached the mudhole because of the fact that the approach was left uncovered by defendant. This misfortune caused his team to become stalled, and had it not befallen him, he would have passed over the crossing in safety. The failure to comply with the statute appears as a producing cause of the injury.

Further, it is contended by defendant that plaintiff was guilty in law of negligence which directly contributed to his injury. We do not think so. While he knew that the train had not passed, he did not know that it was due to arrive at that moment. He satisfied the requirements of reasonable care by stopping, looking and listening. Hearing or seeing nothing of the train, he certainly cannot be pronounced negligent for proceeding to the crossing. We do not agree with defendant that plaintiff's testimony on this subject is at war with the plain physical facts of the situation and that he must have seen and heard the train had he looked and listened. It appears that between the wagon road and railroad, there was a thick growth of rank weeds and underbrush and to the westward, there was timber. The engine carried an electric headlight, the reflection of which could be seen for several miles under favorable conditions, and it is a matter of common knowledge that the rumble of a train running across country at night may be heard a long distance when there are no obstructions, but the evidence shows there were many obstructions between plaintiff and the train which might have prevented him from seeing or hearing it. He was in a low wagon and the weeds, doubtless, kept him from seeing the glare of the headlight. The noise might have been deadened by such obstructions as weeds, trees and embankments along the railroad. (The country was rolling.) Frequently, the rumble of an approaching train will be heard very distinctly and then it will cease altogether because of the

passage of the train from a clear space into a cut or a forest. We cannot say, as a matter of law that plaintiff's testimony must be false and think it was for the jury to say whether he stopped, looked, listened and received no warning that the train was coming. The demurrer to the evidence was properly overruled.

No other error being claimed by defendant, it follows that the judgment must be affirmed. All concur.